CHARLES J. PHELPS V. J. A. PIPER.

FILED JUNE 2, 1896. No. 8040.

1. Secretary of State: RIVAL POLITICAL CONVENTIONS. It is not the province of the secretary of state to determine which of two rival state conventions of the same party is entitled to recognition as the regular convention.

2. Regularity of Nominating Conventions: DUTY OF SECRETARY OF STATE: ELECTIONS. Where two factions of a political party nominate candidates and certify such nominations to the secretary of state in due form of law, the latter will not inquire into the regularity of the convention held by either faction, but will certify to the several county clerks the names of the candidates nominated by each, such practice being in harmony with the rule which requires courts, in case of doubt, to adopt that construction which affords the citizen the greater liberty in casting his ballot. *State v. Allen*, 43 Neb., 651, followed.

3. Australian Ballot Law: NOMINATING CONVENTIONS. The question as to which one of two factions of a political party is the true representative of such political party is rather a political than a judicial question.

ORIGINAL action involving the duty of the secretary of state in certifying nominations for state offices under the provisions of the Australian ballot law.

*W. H. Thompson* and *E. P. Smith*, for plaintiff.

*A. S. Churchill, Attorney General, contra.*

RAGAN, C.

This action concerns the duty of the secretary of state in certifying nominations for state offices under the provisions of chapter 24, Session Laws, 1891, commonly known as the "Australian Ballot Law." It was presented shortly before the last general election and its exigencies required an immediate decision, which was then rendered. Subsequently the parties withdrew the record for the purpose of making certain formal amendments to the pleadings, so that the preparation of an opinion has been necessarily delayed. Notwithstanding the manner in which the parties have entitled the case, it is essentially an application for a writ of *mandamus*. Only when so viewed can it present a case within the original jurisdiction of this court. It has been so treated by the court, and we shall refer, therefore, to Phelps as the relator and to the secretary of state as the respondent.

The relator alleges that he is an elector of the state of Nebraska and the nominee of the democratic party for the office of judge of the supreme court to be voted for at the general election to be held on the 5th day of November, 1895, and that he brings this action in his own behalf, in behalf of the democratic party, and in behalf of all the electors of the said party; that under the rules and according to the usages of the democratic party of the state of Nebraska a committee, called the democratic state central committee, duly authorized by the democratic party of said state, did call a convention of the democratic party of said state to meet in Omaha on the 26th day of September, 1894, composed of 556 delegates duly elected by the democratic party of the state; that said convention was duly organized by the election of

W. D. Oldham as chairman and Dan B. Honin as secretary; that amongst the duties which under the rules and customs of said party devolved upon said convention was that of electing a new state central committee; that said convention, under the rules and customs governing said party, did select a state central committee to serve for the term of two years and selected a chairman thereof to serve for a like period; that under the rules and customs governing said party said committee so elected was charged with the duty of representing and acting for the democratic party of the state at all times during said two years, except when a duly authorized convention was in session; that said committee is the only body under the rules and customs of the party having authority to call a convention, and the only body which has authority when the convention is not in session to act for the party in any way; that said committee, in accordance with the rules and usages of the party, called a convention to meet in Omaha on the 22d day of August, 1895, for the purpose of nominating candidates for the office of judge of the supreme court and for the purpose of nominating two candidates for the office of regents of the university; that said convention, consisting of duly authorized representatives of the party, did meet in Omaha on the 22d day of August, 1895, and did, according to the laws and usages of the democratic party, nominate the relator as the candidate of the party for the office of judge of the supreme court and nominated Alfred T. Blackburn and Robert Kittle as the candidates of the party for regents of the university; that said nominations were duly certified to and filed with the secretary of state on the 5th day of September, 1895, and that no objection to said certificate was filed within the three days provided by law; that said convention was the only body having authority to nominate for the democratic party such candidates; that on the 5th day of September, 1895, a body assembled in Lincoln, "which claimed to represent the democratic party, but which acted without any authority from

said party, or without any right whatever to speak for said party, under the rules and usages governing said party in said state of Nebraska," and nominated T. J. Mahoney as candidate for judge of the supreme court and John H. Ames and W. S. Ashby as candidates for regents of the university; that R. S. Bibb was chairman of said convention and H. B. Hubner was secretary thereof; that said Bibb as chairman and Hubner as secretary did, on the 17th day of September, 1895, file in the office of the secretary of state a certificate in which they falsely and fraudulently stated that said Bibb was the chairman of the convention representing the democratic party and that said Hubner was secretary thereof, and that a convention representing said party did nominate said Mahoney, Ames, and Ashby as aforesaid. The relator further states that each of the said allegations in said certificate is entirely false and made for the purpose of deceiving the voters of the state; that unless restrained the respondent will certify to the clerk of each county the names of Mahoney, Ames, and Ashby as candidates of the democratic party for said respective offices, to be placed upon the official ballot to be voted at the next general election; "that said convention which met in Lincoln on the 5th day of September, 1895, selected a state central committee of thirty-three members; that said committee afterwards met and duly organized by the election of Euclid Martin as chairman thereof and J. B. Sheean as secretary thereof, and that said committee claims to be the democratic state central committee of Nebraska. Plaintiff further says that the candidates and supporters of the ticket headed by Charles J. Phelps and the candidates and supporters of the ticket headed by Timothy J. Mahoney all agree that there is but one democratic party in Nebraska but disagree as to which of the said tickets represents said democratic party; the plaintiff and his supporters contending that the said ticket headed by said Charles J. Phelps represents the democratic party of the said state, and defendant and

his supporters contending that the said ticket headed by
Timothy J. Mahoney represents the said democratic
party." The prayer is, in brief, for an order command-
ing respondent to omit from his certificate to the clerk of
each county the description of Mahoney as a candidate of
the democratic party as judge of the supreme court and
Ames and Ashby as candidates of said party for regents
of the university, and for an order commanding the re-
spondent to make his certificate without employing the
word "democrat" or "democratic" in describing the po-
litical party or principles of said Mahoney, Ames, and
Ashby.

The respondent by his answer challenges the jurisdic-
tion of the court, and admits that plaintiff is the nominee
of a convention claiming to represent the democratic
party. He then alleges at considerable length, in sub-
stance, that the democratic party is a national organiza-
tion of persons entertaining the same general political
views, and that the different state organizations are
merely branches of the national organization for pur-
poses of convenience and for the purpose of maintaining
the political doctrines of the national party; that mem-
bership in the party is dependent on allegiance to the
political doctrines of the national party; that according
to the rules and usages of the party the national conven-
tion, which meets once in four years, is the only body
having authority to declare the party's doctrines, and
that no state organization which does not accept the doc-
trine so declared by the national convention is or can be
the democratic party of the state; that when any state or
other political division is without an organization pro-
fessing allegiance to and teaching the doctrines of the
democratic party as declared at its last national conven-
tion, any body of voters who approve the political doc-
trines of the party have the right to organize committees
and conventions for the maintenance thereof, and com-
mittees and conventions so organized are according to
the rules and usages of the democratic party of such

state; that a convention claiming to be the democratic convention of the state assembled in Omaha September 26, 1894, but said convention was dominated by another organization known as the "Free Silver League," and under such domination said convention expressly refused to approve or sanction the political doctrines of the democratic party, but affirmed antagonistic doctrines and repudiated the doctrines of the party as declared by the last national convention; and that thereupon the democratic state central committee selected in 1892 called together a convention of voters approving the doctrines of the democratic party, and that said convention nominated candidates to be voted for at the general election held in 1894, and selected a state central committee; that on June 27, 1895, said committee called a convention of all voters who approved the doctrines of the democratic party to be held in the city of Lincoln on the 5th day of September, 1895; that pursuant to said call the several counties selected delegates, who assembled in convention in Lincoln on the day named and nominated Mahoney, Ames, and Ashby for judge of the supreme court and regents of the university; that said convention and committee has been recognized by the national democratic party as the only democratic convention and committee of Nebraska. The answer then pleads that the officers of said convention in due form certified such nomination to the secretary of state, and that no objections to such certificate were filed within the time provided by law.

It has been necessary to set forth at considerable length the pleadings, in order to disclose the real question presented for decision. It will be perceived that both the petition and answer disclose that in 1895 two conventions assembled, each by virtue of a call issuing from a body claiming to be the democratic state central committee, and each convention claiming to represent the democratic party of the state. Nominations were made by each convention for the state offices to be filled at the ensuing election, and these nominations were by

the officers of each convention duly certified to the secretary of state. No objections were filed to either certificate within the time provided by law, and the secretary of state was therefore about to certify to the several county clerks the candidates named on each certificate as those of the democratic party. The relator by this proceeding seeks to prevent the certification of the candidates of the Lincoln convention as democratic candidates. If the action of the secretary of state can be controlled by the court in this manner it must be because it is his duty in such case to determine as between two bodies or factions, each claiming to represent a political party entitled to have its candidates' names placed upon the ballots, which of such bodies or factions, according to the rules and customs of such party, rightfully represents it; and further, that when the secretary fails to so adjudicate such question, the court shall determine it and issue its mandate to the secretary of state accordingly. To our minds neither proposition is tenable. Indeed, we think that the case of *State v. Allen*, 43 Neb., 651, is conclusive on the first question at least. It was there held that it is not the province of the secretary of state to determine which of two rival state conventions of the same party is entitled to recognition as the regular convention; and further, that where two factions of a political party nominate candidates and certify such nominations to the secretary of state in due form of law, the latter will not inquire into the regularity of the convention held by either faction, but will certify to the several county clerks the names of the candidates nominated by each, such practice being in harmony with the rule which requires courts, in case of doubt, to adopt that construction which affords the citizen the greater liberty in casting his ballot. In the case cited, candidates representing the same faction as that represented by the candidates, which we will here for brevity designate the Mahoney ticket, applied for a *mandamus* to compel the secretary of state to certify their names as the candidates of the

democratic party, the secretary having refused to do so. The court denied the writ, holding as we have already stated; and further, that the record not disclosing that the relators had been nominated by any convention whatever, the secretary of state could not be required to certify the nominations, because it is his duty to determine, in the case of a certificate filed with him, whether such candidates were in fact nominated by a convention or assemblage of voters or delegates claiming to represent the party; that is, he should satisfy himself of the genuineness of the certificate.   But he has no authority where a convention in good faith, claiming to represent the party, has in fact certified its nominations to him in due form, to refuse to recertify the same to the county clerks. We entertain no doubt of the correctness of the principles announced in that case; and it follows that the court by a writ of *mandamus* cannot compel the secretary of state to perform an act which he has no legal authority to perform.   If it was the duty of the secretary to certify both sets of nominations, and if he had no power to determine between the rival factions which faction represented the democratic party, then it seems perfectly clear that the court can neither require him to make such decision nor can the court itself determine which faction rightfully represents the party, and upon such determination require the secretary to omit from his certificate one set of candidates which *State v. Allen* declares it is his duty to include in the certificate.   The legislature has not provided any means for determining such controversies. Political parties are voluntary associations for political purposes.   They establish their own rules; they are governed by their own usages.   Voters may form them, reorganize them, and dissolve them at their will.   The voters ultimately must determine every such question.   The voters constituting a party are indeed the only body who can finally determine between contending factions or contending organizations.   The question is one essentially political and not judicial in its character.   It would be

alike dangerous to the freedom of elections, the liberty of voters, and to the dignity and respect which should be entertained for judicial tribunals for the courts to undertake in any case to investigate either the government, usages, or doctrines of political parties, and to exclude from the official ballots the names of candidates placed in nomination by an organization which a portion, or perhaps a large majority, of the voters professing allegiance to the particular party believe to be the representatives of its political doctrines and its party government. We doubt even whether the legislature has power to confer upon the courts any such authority. It is certain, however, that the legislature has not undertaken to confer it. We shall not enlarge upon the views we have expressed. If authority were needed in their support, we think the underlying principles suggested are those which governed the courts in *People v. District Court*, 18 Colo., 26, and *Shields v. Jacob*, 88 Mich., 164, as well as in *State v. Allen, supra.*

WRIT DENIED.

NORVAL, J., not sitting.