STATE OF NEBRASKA, EX REL. FRANK L. ROSE, V. JOEL A. PIPER, SECRETARY OF STATE.

FILED DECEMBER 16, 1896. No. 8794.

1. **Elections: CERTIFICATES OF NOMINATION: OBJECTIONS: DUTY OF SECRETARY OF STATE.** The secretary of state in passing upon objections to a certificate of nomination for a public office is not confined alone to the consideration of objections as to matters of form, but has the power to decide from extrinsic evidence whether the candidate named in such certificate was in fact nominated by a convention called and held in accordance with the precedents and usages of a political party which cast one per centum of the votes of the state at the last general election, or by a faction in good faith claiming to represent a party casting such a per centum of the vote of the state.

2. ———: ———: ———: ———. Upon the facts in this case it was *held* that the secretary of state properly refused to certify to the county clerks the names of certain candidates for office.

ORIGINAL application for *mandamus* to compel the secretary of state to certify to the county clerks the names of certain persons as republican nominees for certain offices. *Writ denied.*

*E. H. Wooley, W. M. Morning,* and *C. S. Rainbolt,* for relator.

State v. Piper.

*John H. Ames, contra.*

NORVAL, J.

This was an application by the state, on the relation of Frank L. Rose, for a peremptory writ of *mandamus* to compel the certification by respondent, as secretary of state, to the county clerks of the names of certain persons as republican nominees for electors of president and vice president and the several state offices. A submission was taken upon the pleadings alone, consisting of the application and the answer thereto of the respondent, shortly prior to the last general election, and an oral decision was then announced, the preparation of a written opinion having been delayed until now. For a proper understanding of the questions involved it is not deemed necessary to set out the pleadings; moreover, to do so would extend this opinion beyond reasonable limits. It should be stated here that after the submission a reply to the answer was filed without leave or consent of the court being first had and obtained, and it was accordingly eliminated from the record. The answer, *inter alia*, raised the same objections to the jurisdiction of the court which were presented and determined in *State v. Piper*, 50 Neb., 25, and which must be overruled for the reasons stated in the opinion therein filed.

It clearly appears that at a state convention of the republican party of this state, duly and regularly held in accordance with the practices of the party in such cases, and pursuant to a call executed and published by the chairman and secretary of its state central committee in obedience to an order by said committee, which convention was composed of more than 900 delegates and representing all the organized counties in the state, a full ticket of candidates for all the state offices and presidential electors to be voted at the general election in 1896 was nominated; that a certificate of said nominations, made out in conformity with law, was executed by

George W. Collins and H. M. Wells, respectively the
chairman and secretary of said convention, and in due
time filed in the office of the respondent, as secretary of
state, and that no protest or objection to said certificate
or to said nominations was ever presented or filed with
him. Subsequently, and on the 7th day of October, 1896,
there was filed with the respondent a certificate of nomi-
nation of other persons as candidates for the same offices,
signed by F. L. Rose as chairman and R. A. Williams as
secretary, purporting to be a certificate of nominations
made by a convention of the republican party of the
state, hereafter called the "Rose convention," held in the
city of Lincoln on the 6th day of October, 1896, reciting
and stating that said convention was held "pursuant to
a call regularly issued for a Nebraska state republican
mass convention, which state convention was composed
of delegates and legal representatives duly qualified and
chosen as such, and the legal representatives of the quali-
fied electors and residents of the state of Nebraska repre-
senting the republican party in said state, which said
political party, at the holding of the last election before
the holding of such convention, polled more than one
per cent of the entire vote cast in the state." On October
9, 1896, John P. Maule, a resident and elector of the state,
filed with the respondent written objections to said last
mentioned certificate of nomination and to the nominees
therein named, and thereafter, upon due notice having
been given to all persons interested therein, a hearing
was had upon said protest before the respondent, who,
upon the consideration of the evidence adduced by the
respective parties, sustained said objections and declined
to certify to the various county clerks of the state to be
printed upon the official ballots the names of the persons
mentioned in the Rose certificate. Relator being dissat-
isfied with this ruling and decision commenced this pro-
ceeding.

The secretary of state, at the time of his decision, made
findings of fact and conclusions of law, which are set

forth in full in his answer herein, and which said findings he alleges are in all respects true.    The findings are as follows:

"First—There was not held in said city of Lincoln on the 6th day of October, 1896, or at any time in said year after the first day of July, any convention composed of delegates and legal representatives duly qualified and chosen as such and the legal representatives of the qualified electors and residents of the state of Nebraska representing the republican party in said state.

"Second—I find that on the 3d day of October, 1896, one F. L. Rose, a private individual residing at Lincoln, Nebraska, but not having, or claiming to have, any official relation as committeeman or otherwise with the republican party in said state, caused to be published in the Omaha *World-Herald*, a newspaper published at Omaha, Nebraska, and in the *Evening Post*, a newspaper published at Lincoln, Nebraska, a notice, of which the following is a copy:

" 'LINCOLN, NEB., Oct. 3, 1896.

" 'We, the republicans of the state of Nebraska, reaffirm our allegiance to the time-honored principles of our party as enunciated by John C. Fremont, Abraham Lincoln, and its illustrious framers, and exemplified by the public life and utterances of James A. Garfield, John A. Logan, James G. Blaine, and other great leaders.  To the end that the great principles which called for the grand old party of freedom and liberty shall not perish forever from the face of the earth, and that chattel slavery having been abolished by our party, a more galling subserviency to the money plutocracy of foreign nations and their tory allies on American soil, aided and abetted by corporate greed, shall not forever destroy a government of the people, for the people, and by the people, we invite the co-operation of all republicans who adhere to the original principles of the party to convene in mass convention at the city of Lincoln, at 10 o'clock A. M., on Tuesday, October 6, A. D. 1896, for the purpose of placing

State v. Piper.

in nomination candidates for the following offices to be voted for at the coming election to be held Tuesday, November 3, 1896:

" 'One governor,

" 'One lieutenant governor,

" 'One secretary of state,

" 'One auditor of public accounts,

" 'One treasurer,

" 'One attorney general,

" 'One superintendent of public instruction,

" 'One commissioner of public lands and buildings,

" 'One supreme judge, contingent four years,

" 'One supreme judge, contingent two years,

" 'One regent state university,

" 'Eight presidential electors,

" 'And for the transaction of such other business as may properly come before the convention.

" 'We hereby instruct the chairman of this conference to publish this call. F. L. ROSE,

" '*Chairman.*'

"Third—I find that between the hours of 10 o'clock A. M. and 2 o'clock P. M., on the 6th day of October, 1896, there assembled in a private room on the fourth floor of the Lincoln Hotel, in Lincoln, Nebraska, a number of persons, variously estimated at from thirty-five to fifty, but not exceeding the latter number; that those persons nor any of them, were not chosen or delegated to attend said meeting or any meeting on said day by any political organization or claimed or pretended political organization whatever, or by any person or persons acting or claiming or pretending to act by or under the authority of any political party, political organization, or political committee or committeeman, and that said assemblage was wholly voluntary and self-constituted; that the persons in charge of said room and in the management of said meeting actively concealed the place of said assemblage from the knowledge of the republican voters of said state and city, and from the public generally, and allowed

information thereof to be given only to such persons as were actually present thereat, and that at said meeting so held, and not elsewhere or otherwise, were the several persons, or any of them, mentioned in said purported certificate of nomination attempted or pretended to be or to have been put in nomination as candidates for any of said offices.

"Fourth—I find that during the entire time of the existence of said assemblage and for several hours prior thereto a large concourse of persons, several hundred in number, professing to be members of the republican party in said state and in sympathy with the sentiments expressed in said published notice and of the persons therein named, and all or nearly all of whom are and have been for many years actively affiliated with said republican party, were making active and diligent search and inquiry of the proprietors and managers of the theaters and public halls and of the clerks and proprietors of the several hotels in said city, and at the place of business of said Rose, for the purpose of ascertaining if possible the whereabouts of said Rose and the time and place of the holding or assembling of any meeting or convention pursuant to said notice; and that the persons making such inquiries and the public generally, except such persons as were in fact present at said assemblage, were unable to ascertain the place or time of said assemblage and remained ignorant thereof until after the same had dispersed.

"Fifth—I find that between the hours of 10 o'clock A. M. and 2 o'clock P. M., on said 6th day of October, 1896, the concourse of persons mentioned in the last preceding paragraph of these findings, being unable to ascertain the place of said assemblage, themselves assembled to the number of several hundred, but to what exact number I have been unable to ascertain, at the Capital Hotel, in the city of Lincoln, Nebraska, and organized, by the choice of Charles H. Gere, of Lincoln, Nebraska, as chairman, and Samuel E. Low, of Lincoln, Nebraska, as sec-

retary of said meeting, and thereupon proceeded to nominate a candidate for each of the several offices to be voted for at said general election to be held in this state on the 3d day of November, 1896. And thereafter, and on the said day of October, 1896, the said Charles H. Gere as such chairman and the said Samuel E. Low as such secretary duly made, executed, and filed in this office, in due and apparent conformity with law, a certificate of the nominations of all of said candidates so nominated by said assemblage of voters at the said Capital Hotel on said day, and that no objection or protest to said certificate of nomination has ever been made in writing or filed in this office.

"Sixth—I find that according to the customs and usages of the republican party in the state of Nebraska, no convention thereof could have been or can be regularly called or held, except upon the call or proclamation of the chairman and secretary of the republican state central committee of said party, they being first duly authorized in that behalf by a resolution of said committee, and that no such call has been made or authorized for the holding of a state convention of said party in said state on the 6th day of October, 1896.

"Seventh—I find that the said assemblage of persons in a room on the fourth floor of the Lincoln Hotel on the 6th day of October, 1896, was not attended by or composed of so many persons as one per centum of the entire vote polled in the said state at the last election before said date, nor did they represent any political party or any political organization or association which at the last election in said state before said date polled so many as one per centum of the entire vote in said state, and that of said assemblage the said F. L. Rose was chosen and acted as chairman, and the said R. A. Williams was chosen and acted as secretary, and that said persons were not either of them chosen as chairman or secretary of any other meeting or assemblage held in said city of Lincoln on said day."

Conclusions of law: "I find (1) that the said assemblage mentioned in the last preceding paragraph numbered seventh was not such an assemblage of voters, convention, or primary meeting as was permitted by law to nominate candidates for office to be voted for at the general election in said state to be held on the 3d day of November, 1896; (2) that the said purported certificate of nominations signed by the said F. L. Rose as chairman and R. A. Williams as secretary is fraudulent and void, and the names of none of the persons therein contained ought to be certified to the several county clerks or printed on the official ballots to be used at said election to be held on the 3d day of November, 1896, and, in conclusion, I sustain the said written objections to said purported certificate of nominations and order that the names contained therein be not certified to the several county clerks of this state or printed upon the official ballots to be used or voted at said election."

The foregoing findings of fact must, for the purposes of this case, be treated as true, since they were not controverted on the hearing by evidence or otherwise. (*State v. Piper, supra.*)

It was contended by counsel for relator, in argument, that the respondent exceeded his authority in holding invalid the Rose certificate. The duties and powers of the secretary of state in passing upon objections to certificates of nomination, in view of the previous decisions of this court upon the subject, ought not longer to be misunderstood. It is the settled law of this state that such officer, in the consideration of objections, is not confined to mere formal matters relating to certificates, but that the Australian Ballot Law contemplates that he may ascertain and decide from extrinsic evidence whether the candidates named in the certificate were in fact placed in nomination by a convention or assemblage of voters or delegates called and held according to usages of the party and claiming in good faith to represent a political organization which cast the requisite number of

votes at the last election. Furthermore, that he has no power to decide which of two rival conventions thus called and held is the regular convention of the party, but where two factions of a party make nominations by regularly called conventions, it is his duty to certify the names of the candidates certified to him in due form by the officers of either convention. (*State v. Allen*, 43 Neb., 651; *Phelps v. Piper*, 48 Neb., 724; *State v. Piper*, 50 Neb., 25.)

It is insisted that the case at bar is controlled by the last two authorities cited. If the facts in the case were the same, the conclusion would be irresistible that the secretary should have certified the nominees mentioned in the Rose certificate. But they are not alike, and the facts herein are plainly distinguishable from those in the two decisions mentioned. . In each of those cases two conventions were regularly called and held in conformity with party precedent and usage, by rival factions of the democratic party, and nominations made, each branch of the party having an organization and claiming in good faith to represent the party. Upon those facts it was properly ruled that it was the duty of the secretary of state to certify both sets of candidates, since both conventions had apparently the same right to make nominations as if they had represented different political parties, and it was not the province of the secretary of state to decide between them. In the case under consideration, so far as disclosed from this record, relator's claim of validity of the nominations made by the alleged Rose convention is based upon the certificate of nomination alone, it not having been disclosed that said convention was called according to party usages, or by any person or body having the right to represent the republican party of the state, or that the convention itself was composed of persons who had been chosen by said party, or a faction thereof, as its delegates and representatives. On the contrary, it appears that the call for the alleged convention was issued by a person who had no authority

to represent said party in that behalf; that only three days' notice of the time when the convention was to be held was given, and that it omitted to designate the building in which it was to convene; that the precise place of meeting was concealed from the knowledge of the republican voters of the state, as well as the general public, notwithstanding diligent inquiry and search for the place of holding the convention was made by several hundred persons claiming to be republicans and in sympathy with the sentiments expressed in the published convention call; that said alleged nominations were made in a private room in one of the hotels of the city of Lincoln, by an assemblage of persons not to exceed fifty in number, none of whom had been chosen or delegated to attend thereat by any political party or organization; and that the certificate of nomination purports to emanate from a delegate convention, while the call was for a mass convention,—in brief, that the candidates named in the Rose convention call were not nominated by a convention or assemblage of republican voters brought into existence by the action of the machinery of the republican party of the state empowered to call conventions, or by the authority of any considerable number of republican electors, but in pursuance of a call made by a person who did not represent, or claim to represent, the regularly constituted organization.    In the light of the facts disclosed by this record, the names of the nominees of said convention so called and clandestinely held were not entitled to be printed upon the official ballots, and to so hold is not deciding between regularly called rival conventions, nor does this conclusion conflict with any prior adjudication of this court, but is in perfect harmony therewith.    If said nominations are legal and entitled to recognition, then our Australian Ballot Law was wrongly entitled. Instead of being "An act to promote the independence of voters at public elections," etc., it should have been designated "An act to promote the deception of voters at public elections."    Although the courts will not de-

cide which of two rival conventions is the regular convention of the party, when both were called and held in accordance with the precedents and usages of the party, and each claiming in good faith to represent the party, since that is not a subject of judicial inquiry, yet the courts, in a proper case, will determine whether nominations were in fact made by a *de facto* convention of the party, even though to do so may lead to an investigation of political methods. As was said by the supreme court of Missouri (*State v. Lesueur*, 103 Mo., 253): "The same considerations which should induce courts of justice to maintain the purity of the ballot-box, when the final vote is taken, should equally operate with them to promote honesty and prevent and condemn fraud when a preliminary vote is taken or a nominating convention held. There can be no difference in principle in its application to the various situations mentioned. And though it is said that 'the Decalogue has no place in politics,' yet when the tribunals of the country are appealed to in matters having political complexion and bearing; when once they acquire jurisdiction in a proper way of such matters, they will administer justice, promote honest dealing, and condemn fraud precisely as they do when administering the law in cases sounding in damages or sounding in contract."

The conclusion we have reached finds some support in the judicial decisions of other courts. *State v. Weir*, 31 Pac. Rep. [Wash.], 417, was an application for a *man-damus* to compel the secretary of state to certify the name of N. H. Bloomfield as the regular nominee of the republican party for the office of superior judge for Clarke, Cowlitz, and Skamania counties. Delegates from two of the counties, duly chosen, nine in number, met together and placed in nomination Mr. Bloomfield, and certified such nomination to the secretary of state. The thirteen delegates who had been duly chosen by the republican party of the other county held a judicial convention and nominated one A. L. Miller as a candidate for superior

judge for all of the three counties for which a judge was to be elected, whose nomination was duly certified to the secretary of state.   The court held, under provisions of a ballot law relating to nominations for public office the same as ours, that Bloomfield was not the nominee of the republican party for said office, and denied the writ. The court, in the opinion, say: "The plain intent of said section, when examined in the light of all the other sections upon the subject, makes it perfectly clear that the primary meeting or convention must be by or on behalf of the entire body of voters of the respective party who are to be allowed to vote at the election of the officers therein nominated."   To the same effect is *State v. Rotwitt*, 46 Pac. Rep. [Mont.], 370.   In *Baker v. Board of Election Commissioners*, 68 N. W. Rep. [Mich.], 752, it appears that the regularly called democratic state convention met at Bay City, Michigan, on August 25, 1896, and upon the same day and in the same city the convention of the people's party and union silver party convened.   By an amicable arrangement the three conventions sat as one body and nominated a joint state and electoral ticket, which it was agreed would be called the "Democratic People's Union Silver Ticket," the people's party and the union silver party being together accorded the same number of votes as the democratic party.   Subsequently, a mass convention composed wholly of democrats was held at Lansing, at which candidates for state offices and presidential electors were placed in nomination as a democratic ticket, but which last convention was not called or held under the auspices of any previous democratic state organization.   It was held that neither of the tickets so nominated was to be considered as the regular democratic ticket, and, as such, entitled to the place on the ballot belonging to the ticket of the democratic party.   Both upon principle and authority we are satisfied that the secretary rightly determined that the names of the nominees of the so called Rose convention were not entitled to appear upon the official ballot.

Two other questions were argued at the hearing, namely: First—The Rose certificate is insufficient on its face, because it purported to come from a delegate convention when the call was for a mass convention. Second—Under our Australian Ballot Law, nominations for state offices cannot be made by a mass convention composed of less than 500 voters, or one per centum of the total vote of the state cast at the preceding general election. The conclusion reached makes it unnecessary to express our views upon either of these propositions, and we refrain from doing so, notwithstanding, at the hearing, the majority of the court was of the opinion, and so announced, that the second proposition above stated was the proper interpretation of the law.

WRIT DENIED.

IRVINE and RYAN, CC., not sitting.

RAGAN, C.

I concur in the conclusion reached only.