ROBERTO H. TODD, NOMINEE OF PURE REPUBLICANS OF PORTO RICO FOR THE OFFICE OF RESIDENT COMMISSIONER TO THE UNITED STATES, PETITIONER, v. EDUARDO J. SALDAÑA, EXECUTIVE SECRETARY OF PORTO RICO, RESPONDENT.

No. 223.—Decided August 2, 1924.

MANDAMUS— PURPOSE OF REMEDY— PUBLIC OFFICIALS— ELECTORAL QUESTION— BOARD OF ELECTIONS.—In answer to a petition for a writ of mandamus the respondent alleged that there were two candidates for one office and that the course marked out by law for such cases would be followed. The petitioner questioned the applicability of the law invoked. *Held:* That as the Supreme Court was not in a position to decide categorically that the law did not apply, it would vacate the writ issued and deny the petition, without prejudice to the petitioner's right to bring other proceedings.

PETITION for a rule against the respondent to show cause why a writ of mandamus should not be issued commanding him to receive the nomination of the petitioner and transmit it to the Insular Board of Elections.

*Messrs. Willis Sweet, R. H. Todd* and *R. Martínez Nadal* for the petitioner.

*The Attorney General* and *Messrs. Miguel A. Muñoz, A. Fernández Diez* and *Carlos Llauger* for the respondent.

### ORDER.

WHEREAS, In answer to the petition filed in this proceeding the Executive Secretary alleged that there were two candidates of the same party for the same office and stated that he would follow the course prescribed by section 36 of the Electoral Law;

WHEREAS, The petitioner questioned the applicability of that law, and

WHEREAS, Within the time available for considering the question the Court is not prepared, under the facts and the jurisprudence placed before it, to hold positively that the said law is not applicable;

THEREFORE, The writ is discharged and the petition is denied, without prejudice to the right of the petitioner to bring further proceedings before the courts as he may be advised.

*Petition denied.*

Mr. Justice Aldrey concurred in the result.

Mr. Justice Franco Soto dissented.

### CONCURRING OPINION OF MR. JUSTICE ALDREY.

On July 19, 1924, Robert H. Todd presented to this court a petition for a writ of mandamus against Eduardo J. Saldaña, Executive Secretary of Porto Rico, alleging in substance that on the 11th day of the same month he presented to Saldaña a certificate showing that at a convention held on June 28th and 29th, 1924, by the Porto Rican Republican Party he had been nominated as candidate for the office of Resident Commissioner to the United States in the general election which would be held in this Island in the month of November, 1924. The certificate is signed by Manuel F.

Rossy and Fernando Géigel who only acknowledged the genuineness of their signatures before a notary public. The petitioner prays for a rule against the said Saldaña requiring him to show cause why a writ of mandamus should not be issued against him ordering him to receive the nomination of Todd and send it to the Insular Board of Elections with instructions that his name be placed on the electoral ballots for the election as the candidate of the Republican Party of Porto Rico, under the emblem of the said party—the eagle.

This court issued the rule prayed for, from which I dissented for the reasons that inasmuch as it was not alleged in that petition that Executive Secretary Saldaña had refused to receive the nomination of Todd, it was improper to take any action against him to compel him to perform an act which he was not alleged to have refused to perform, and that although it was said in the petition that the petitioner had information that Saldaña would refuse to receive that nomination, I considered that this was not sufficient to authorize the mandamus proceeding, because it was not alleged expressly that the respondent refused to perform any act which the law obliges him to perform, the fact that a few days intervened between the presentation of the nomination and the petition in mandamus not being of itself a positive demonstration of a refusal of the Secretary.

On the day set by the court Saldaña appeared for the sole purpose of objecting to the jurisdiction of the court because he had not been summoned personally, and he presented his affidavit to the effect that the candidacy of Todd was not presented to him, as alleged in the petition, and that he had not refused to receive it, for on the dates referred to in the petition in mandamus he was absent in the United States on a vacation to terminate at the end of the month of July, when he would again take charge of his office.

The court discharged the rule against Saldaña and on the 29th of July Todd presented an amended petition for a writ of mandamus. The court ordered that on the following

day Saldaña should appear to show cause for not receiving and filing the nomination of the petitioner. as candidate of the Porto Rican Republican Party for the office of Resident Commissioner to the United States and for not sending that nomination to the Insular Board of Elections with instructions that it be included in the proper place on the electoral ballots as the candidate of the Porto Rican Republican Party, under its emblem—the eagle.

Saldaña again appeared before this court and presented an affidavit stating that he approved all of the acts of Herrero, Acting Executive Secretary of Porto Rico, in relation to the question under consideration, alleging that from the said acts it is deduced that the certificate of the nomination of Robert H. Todd for Resident Commissioner to the United States was received in the office of the Executive Secretary of Porto Rico on the date of its presentation; that the said certificate is now in the files of the said office and forms a part of its official records, and that these facts are stated under oath by him in the affidavit exhibited and made a part of the record of the case. He also alleged in answer to the other point of the rule that according to section 41 of Act No. 79 of 1919 to establish the law of registration and elections, as amended on July 30, 1923, there has not been and is not at present any obligation or duty on the part of the respondent to send to the Insular Board of Election the name of any candidate whose nomination may have been filed in the office of the Executive Secretary of Porto Rico to be voted for at the election to be held on November 4th of this year; that such obligation will not exist until October 1, 1924, when it is the duty of the Executive Secretary to transmit to the said board certified lists of the names of all candidates on the same day, and that the respondent has no obligation under the law to transmit separately to the Insular Board of Elections the name of any candidate for any office to be voted for at the next election. The respondent also alleged as a reason which bars absolutely the issuance of the writ of man-

damus in this case that in the afternoon of July 29, 1924, there was delivered to him personally a certificate signed by José Tous Soto and Eugenio Lecompte as president and secretary, respectively, of a convention held by the Porto Rican Republican Party in the City of San Juan on the 25th of July showing that the said party nominated Hon. Félix Córdova Dávila as its candidate for the office of Resident Commissioner to the United States; that the said certificate of nomination, as well as the certificate presented in the name of Todd, was received in the office of the Executive Secretary of Porto Rico and placed in its files, forming a part of the official records of the said office; that these facts are stated under oath in the affidavit exhibited and made a part of the record of the case; that inasmuch as the certificate of nomination presented in the name of Todd has been made in the name of the Porto Rican Republican Party, as appears from the accompanying certificate, and the certificate of nomination made in the name and favor of Hon. Félix Córdova Dávila appears also to be made in the name of the Porto Rican Republican Party, or the same party alleged to have nominated the petitioner in this case, the action of the Executive Secretary of Porto Rico is expressly and textually prescribed in section 36 of the Electoral Law of Porto Rico; that, according to the second paragraph of that section, after these two certificates of nomination are filed the action of the respondent under the present circumstances is limited to giving notice of this fact to the central committee of the party in whose name these two certificates of nomination have been presented, and that the authority of determining which of these certificates of nomination represents the official candidacy of the said party has been conferred expressly by said section 36 upon the said central committee. The respondent also alleged that as the certificate of nomination of Félix Córdova Dávila had been presented in his office on the day before, he had not had time to comply with the

express provision of the law in such circumstances, but that he intended to comply with it strictly as soon as possible.

With that answer were exhibited as a part of it several affidavits to prove the facts alleged, among them that the nomination of Todd was received in the office of the Executive Secretary of Porto Rico and is among the documents of its records; that receipt was acknowledged to Todd of his candidacy; that on July 14, 1924, José Tous Soto, as president of the Porto Rican Republican Party, delivered in the same office an affidavit stating that the said Porto Rican Republican Party had held no convention up to that date for nominating candidates for the election of this year, and that on July 21st the Executive Secretary requested Todd in writing to submit proof that the convention which nominated him was properly assembled. None of the facts stated in those affidavits have been denied by the petitioner.

Section 36 of the Electoral Law, as amended on July 30, 1923, provides that any political party which shall have cast more than twenty per cent of the total vote of the Island for Commissioner to Washington at the last general election shall be entitled to nominate candidates by duly called conventions which shall be held not later than September fifth, and that the president and secretary of such conventions shall certify to the Executive Secretary, not later than twelve o'clock noon on September tenth, the names of all candidates nominated by the convention.

In this case the certificate of nomination of the petitioner was presented to the Acting Executive Secretary of Porto Rico on July 11, 1924, and as the respondent, Secretary Saldaña, alleges under oath that the said certificate was received in his office on the date of its presentation and that it appears in the files of the office and forms a part of its official records, a writ of mandamus should not issue to compel him to do what he acknowledges and admits that he has done, that is, to receive and file with the other official documents of his office the petition of Todd, the receipt and filing of

which appears more clearly from the affidavit exhibited with his answer; therefore, in view of these facts admitted by the respondent secretary, this court has not to pass upon the action of the acting secretary in requesting Todd to submit proof of his nomination. The demand of the petitioner that the Executive Secretary send his name to the Insular Board of Elections to be printed on the official ballots as the candidate of the Porto Rican Republican Party for the office of Commissioner to Washington is contrary to the law, for its section 41 provides that on the first day of October the Executive Secretary shall transmit to the Insular Board of Elections certified lists of the names of all candidates filed in his office, and as that day has not arrived, the petitioner can not require or compel the respondent to send the name of the petitioner as such candidate to the said Insular Board of Elections. Furthermore, the secretary is under no obligation to transmit separately to the board the names of candidates as they are presented, but is required to send lists of all of the candidates on the first day of October.

The petition for a writ of mandamus should be denied also because the second paragraph of said section 36 provides that no political party shall file more than one nomination for each office and as certificates of nomination may be presented until the tenth day of September, the secretary can not know until that date whether the nomination which has been presented to him is that which he must certify to the Insular Board of Elections on the first day of October to figure in the electoral ballots, for as our law foresaw in the second paragraph of said section 36 that there might be presented more than one nomination as candidates agreed upon by two or more conventions of the same party, as in this case in which two candidates of the Porto Rican Republican Party for Resident Commissioner to the United States have been presented, it provides that in a case like the present case the Executive Secretary shall notify the central committee of said party, which committee shall be

empowered to determine which is the official nomination of the party, and its decision shall be filed with the Executive Secretary before twelve o'clock noon on September twentieth, and that the Executive Secretary shall be governed by said decision unless on or before September thirtieth a court of justice shall have ordered otherwise.. It also provides that if the central committee of the interested party should fail to file its decision before twelve o'clock noon on September twentieth, the nomination first filed with the Executive Secretary shall be considered as the official nomination of said party and all other nominations of the same party for the same office shall be deemed null and void.

Inasmuch as our law forbids that there shall be more than one candidate of each political party; inasmuch as it has foreseen the case in which two or more candidates may be presented as of the same party and has prescribed clearly what shall be done in such a case, and inasmuch as the secretary- declares under oath that he is disposed to comply with the law as soon as possible and it has not been determined which of the two nominations presented is the official one, this Court can not order the Executive Secretary to consider that of the petitioner as the official nomination which must figure in the electoral ballots. That is what the statute provides and we are not legislators to change it and establish something to the contrary or distinct from the provisions of the statute.

It is true that the Supreme Court of Nebraska in the case of *Phelps* v. *Piper,* 48 Neb. 724, and the Supreme Court of Michigan in the case of *Stephenson* v. *Board of Elections,* 118 Mich. 396, held that in case of two candidates of the same party both should figure in the electoral ballots, but those decisions are not applicable to the case here under consideration because both are based on the fact that the legislatures of those States had not provided for what should be done in such a situation, and in the former case it was said that "the legislature has not provided any means for determining

such controversies." In the latter case the court said: "Here we have to deal with two conventions, each claiming the right to represent the same political party. The act itself will be searched in vain for any provision for such a contingency. It was not contemplated by the Legislature, and therefore not provided for. It should not be a matter of surprise that the act as originally passed is not perfect in all particulars."

Our Legislature foresaw the case which was not contemplated by these two States and consequently the secretary must follow the course marked out by it and is so disposed.

For the reasons stated the petition for a writ of mandamus should be denied and I concur in the decision of the court only in so far as it refused to issue the writ.

### DISSENTING OPINION OF MR. JUSTICE FRANCO SOTO.

I regret to have to dissent from the conclusion arrived at by the other justices of the court in the decision of this case. The conclusion of the majority is that the writ of mandamus must be denied, but it is well to observe that uniformity has not prevailed as to the grounds for such denial. In any event, this case has not been decided on its merits and as sufficient elements for this purpose appear from the petition and the documents accompanying it as well as from the respondent's answer, I think that this is the error which has been committed. I doubt that we can refuse to decide a case because it is not shown positively that the law is not applicable. It seems to me to be a question that we can decide ourselves, because it is perhaps a duty imposed upon us by section 7 of the Civil Code.

My dissent is based on the opinion that section 36 of the Election and Registration Law, as amended July 30, 1923, is not applicable to the facts of this case. And there being no statute in Porto Rico providing for a situation like that presented in this case, there is no other way but to resort

to and apply the principles and jurisprudence applied in similar cases in different States, which we shall now examine and discuss.

In those States in which the codes give the courts no express jurisdiction to interfere and settle controversies arising within the organization of political parties the question is left to be decided by the vote of the people at the general elections.

"In some jurisdictions, however, the courts refuse to determine which of two rival factions of a political convention represents the party, and hold, where two sets of nominations have been made, that both tickets should be placed upon the ballot. Stephenson v. Election Com'rs., 118 Mich. 396, 76 N. W. 914; Phelps v. Piper, 48 Neb. 724, 67 N. W. 755; State v. Piper, 50 Neb. 42, 69 N. W. 384." 21 Ann. Cases, 298.

In other States, for example, Montana, Wisconsin, Massachusetts, New York, etc., the codes give the courts power to try and determine controversies arising within each political party, but the authorities differ as to whether or not the decision of a political committee can bind the courts with regard to a conflict between rival factions claiming at the same time to be the legitimate or regular representatives of the party. But whatever may be the diversity of opinion of the authorities in those States, although the official who receives and files the nominations has certain powers to inquire into their regularity, it is different in the States first mentioned and others adopting the same course, in which, there being no statute conferring upon the courts jurisdiction to inquire into the regularity of rival conventions of the same political party, the official in charge of receiving and filing the nominations has absolutely no discretional or quasi-judicial power to inquire into the regularity of a political convention, and much less to attempt to determine which is the real representative of the party. His duty of receiving and filing the nominations is ministerial. His authority does

not extend to deciding which of the two tickets should be printed on the official ballot and his power is limited exclusively to require the correction of irregularities that may appear from the certificate in order to insure the authenticity of the document.

Entering now into the merits of the case, it appears from the answer of the Executive Secretary that the nomination of the petitioner, Robert H. Todd, for the office of Resident Commissioner to the United States, made, according to the certificate, at a convention of the Porto Rican Republican Party held on June 29, 1924, was presented in the office of the Secretary on July 11, 1924, for the purpose of having it filed in accordance with the law. The certificate *prima facie* complies with all of the external formalities. The signatures of the president and secretary of the convention at which the nomination is alleged to have been made are authenticated before a notary. This is one of the formalities that within his ministerial duties the Executive Secretary may inquire into in case the said signatures had not been acknowledged before a notary. He could also ascertain for himself whether such a convention had in fact been held, but he could make no further inquiry, and much less could he inquire into the regularity of the convention that nominated the petitioner. Therefore, the Executive Secretary, relying, as may be deduced from his answer, on the advice of the Attorney General of Porto Rico, exceeded his power in requiring of the petitioner proof *aliunde* of the regularity of the convention, and this was an indirect manner of refusing to receive and file the said nomination in his office when it was his duty, there being no informalities to correct, to receive and file it for the purpose of its being sent at the proper time to the Insular Board of Elections to be printed at the proper place on the official ballot, without stopping to determine whether the party was lawfully represented.

If a few days after receiving the nomination of the petitioner the Executive Secretary received a certificate signed

by José Tous Soto and Eugenio Lecompte, as president and secretary, respectively, of the same Republican Party, stating that on the date to which the nomination of the petitioner referred no convention had been held to nominate a candidate for the office of Resident Commissioner to the United States, and still later he received a certificate signed by the same persons as such president and secretary of a convention held by the Porto Rican Republican Party in the city of San Juan on July 25, 1924, at which Félix Córdova Dávila was nominated as the candidate of the said party for the office of Resident Commissioner to the United States, these facts corroborate the fact, as alleged in the petition for a writ of mandamus and shown by the affidavits accompanying it, that the Porto Rican Republican Party was divided into two factions, and that it was a matter of a real division in the body of the party and not a question of mere local dissensions or disagreements in the minor organizations of the party, which is solely and really what was contemplated by section 36 of the Election and Registration Law, as amended July 30, 1923. This statute, therefore, applies only to dissensions occurring in the nomination of local candidates, such as nominations for municipal tickets, district representatives, district senators, etc., and other disagreements that can be substantially settled by a central committee, as provided in section 36; but when a party is divided in a manner affecting what may be called its fundamental organization, under no reasoning can it be held that the question to be decided is a partial one, for it is a serious controversy involving the purity and the very life of the party divided into two branches. The Election Law in force may be searched in vain for a provision covering such a contingency, and it is because reason dictates that the Legislature of Porto Rico did not contemplate events that have occurred later. Section 36 could not be clearer in its terms. The legislation was for ordinary cases and not for extraordinary occurrences. We can not force its construction without exceeding our own powers as

judges for interpreting the law. For the sake of clearness we transcribe said section 36, which reads as follows:

"Any political party which shall have cast more than twenty (20) per cent of the total vote of the Island for Commissioner to Washington at the last general election, shall be entitled to nominate candidates by duly called conventions. Such conventions shall be held not later than September fifth, and the president and secretary of such conventions shall certify to the Executive Secretary, not later than twelve o'clock noon on September tenth, the names of all candidates nominated by the convention. Should any party fail to file with the Executive Secretary on or before twelve o'clock noon on September tenth the name of a candidate for any office, then the party so failing shall forfeit the right to name candidates for such office or offices.

"No political party shall file more than one nomination for each office. Should more than one nomination be filed as nominations agreed on by two or more conventions of the same party, the Executive Secretary shall notify the central committee of said party, which committee shall be empowered to determine which is the official nomination of the party. The decision of said central committee shall be filed with the Executive Secretary before twelve o'clock noon on September twentieth. The Executive Secretary shall be governed by said decision unless on or before September, thirtieth a court of justice shall have ordered otherwise. Should the central committee of the interested party fail to file its decision before twelve o'clock noon on September twentieth, the nomination first filed with the Executive Secretary shall be considered as the official nomination of said party and all other nominations of the same party for the same office shall be deemed null and void."

Hence, we can not apply this statute and there being, consequently, no statute to meet a condition such as the one shown by the record, or there being no statute to cover a situation like the present, we must resort to the means most in harmony with the democratic principles prevailing in a free government whose power and strength are derived from the will of the people. This is the principle underlying the jurisprudence in all of those States in which it has been held that the rival nominations shall be printed on the ballot in order that the people may decide.

One of the cases that best illustrate this matter and in which the language of the Supreme Court of Nebraska is really suggestive, is that of *Phelps* v. *Piper,* 48 Neb. 724. The opinion reads in part as follows:

"The legislature has not provided any means for determining such controversies. Political parties are voluntary associations for political purposes. They establish their own rules. They are governed by their own usages. Voters may form them, reorganize them and dissolve them at their will. The voters ultimately must determine every such question. The voters constituting a party are, indeed, the only body who can finally determine between contending factions or contending organizations. The question is one essentially political, and not judicial, in its character. It would be alike dangerous to the freedom of elections, the liberty of voters, and to the dignity and respect which should be entertained for judicial tribunals, for the courts to undertake in any case to investigate either the government, usages, or doctrines of political parties, and to exclude from the official ballots the names of candidates placed in nomination by an organization which a portion, or perhaps a large majority, of the voters professing allegiance to the particular party believe to be the representatives of its political doctrines and its party government. We doubt even whether the legislature has power to confer upon the courts any such authority. It is certain, however, that the legislature has not undertaken to confer it. We shall not enlarge upon the views we have expressed. If authority were needed in their support, we think the underlying principles suggested are those which governed the courts in People v. District Court, 18 Colo. 26, 31 Pac. 339; Shields v. Jacob, 88 Mich. 164, 50 N. W. 105; as well as in States v. Allen, supra."

Another case of exceptional importance is that of *Stephenson* v. *Board of Election Com'rs,* 118 Mich. 396, which practically affirms all of the political principles laid down in the previous cases. There it was said:

"It has been held in this state that, where rival factions of a regularly called convention of a party nominate and certify different tickets, the election commissioners have no authority to accept one, to the exclusion of the other; and it was held, further, that, under such circumstances, both tickets should be printed upon the ballots; and it was said in that connection that the name of

the party as certified should be placed above the ticket, without further addition or distinctive designation than such as was contained in the certificates furnished. See Shields v. Jacob, 88 Mich. 164, 50 N. W. 105. That case arose under Act No. 190, Pub. Acts 1891, which provided for what is ordinarily called an 'Australian Ballot'; requiring the adoption of a vignette by each party, under which the party ticket was required to be printed.

"A similar question arose in Colorado the next year, under a law of like character, which provided that the officer with whom the certificate was filed should pass upon objections seasonably filed. At a convention regularly called, a disagreement arose, which resulted in a division and two tickets; each faction claiming to represent the party, and each filing the certificate provided for by the statute. It was claimed that the secretary of state had authority to determine which ticket was entitled to a place upon the ballot; but the court held otherwise. It was said that his power extended only to the correction of informalities. The court said: 'As to what were the duties of the secretary of state under the circumstances of this case is still, however, to be decided. Here we have to deal with two conventions, each claiming the right to represent the same political party. The act itself will be searched in vain for any provision for such a contingency. It was not contemplated by the legislature, and therefore not provided. . . . .' "

In this case reference was made to some States having statutes conferring upon the courts jurisdiction to settle disputes between rival factions and to determine which of them has the genuine representation of the party, and special attention is called to the State of New York where a rebellious political faction triumphed over the judicially determined rights of another faction, and, commenting on the New York case, the following was said in the opinion:

"Thus, it will be seen that Mongin and politics triumphed over the judicially determined rights of Patterson. A more unseemly and humiliating chapter is not to be found in the history of jurisprudence in this country, and it is all due to the misguided attempt to impose upon the court the duty of presiding over political conventions and caucuses through the medium of actions or proceedings at law, unfitted for the purpose."

We can not see how it can be stated, in order to make

section 36, *supra,* somewhat applicable, that in the petition
it is not alleged that there is not a central committee of the
Porto Rican Republican Party. If it is alleged that at a
convention held on May 3, 1924, the said party decided to
make an alliance with the Union Party of Porto Rico and
a part of the delegates retired and now allege that they are
the real Porto Rican Republican Party, it is obvious that a
central committee with power to settle such a controversy
could not survive the division of the party. It would be con-
trary to common sense and to the rules of procedure and
sound reasoning to submit the question to the central com-
mittee of either of the two rival factions, because the com-
mittee would be judging its own case. *Nemo debet esse
judex in propia causa.*

It might be believed, perhaps, that two tickets would
create certain confusion among the electors and induce them
to mark the tickets incorrectly. In connection with this ap-
parent difficulty, in the case of *Stephenson* v. *Board of Elec-
tion Com'rs, supra,* this part of the question is dealt with
and the reasoning of the court is so strong that we think it
overrules all objection. On this point the court expressed
itself as follows:

"Little weight should be attached to the argument that the
voters may be deceived by having two Democratic tickets in the
field. At one time, no doubt, voters were often misled by having
names printed under certain designated headings that did not prop-
erly belong thereunder. But this deception was only accomplished
by secrecy, and by the lateness of the hour at which such irregular
tickets were distributed, usually only upon the day of election.
But, under the present law, the danger of deception in the man-
ner indicated is certainly reduced to the minimum. The secretary
of state is required to certify these tickets to the county clerks, and
the county clerks must, in turn, cause the same to be published
several days before the election."

In conclusion, if the Executive Secretary has intended to
and persists in following the course marked out by section
36, his action is erroneous. His duty, for the reasons stated,

is ministerial and I am of the opinion that a peremptory writ of mandamus should issue commanding him to receive and file the certificate of the petitioner and take such further action as this opinion indicates.