STATE OF NEBRASKA, EX REL. P. D. STURDEVANT ET AL., V. JOHN C. ALLEN, SECRETARY OF STATE.

FILED FEBRUARY 5, 1895.  No. 7289.

1. Construction of Statutes. Where a provision is ambiguous the courts will adopt that interpretation which is most in harmony with the spirit of the act, and best adapted to the promotion of its general object.

2. Australian Ballot Law: BALLOTS: NAMES OF CANDIDATES: PARTY DESIGNATIONS. The act approved March 4, 1891, commonly called the "Australian Ballot Law," contemplates that the name of each candidate shall be printed once only on the official and sample ballot, accompanied by such political or other designations as correspond to the nomination papers on file with the officers charged with the duty of printing and distributing such ballots. *State v. Stein*, 35 Neb., 848, distinguished.

3. Certificates of Nomination: DETERMINATION OF VALIDITY: HEARING. It is provided by said act that all certificates of nomination which are in apparent conformity therewith shall be deemed valid unless objection is made thereto; that in case objections are made candidates shall be notified and the officer with whom the certificate is filed shall pass on such objections,

and his decision will be final unless a further order is made by the county court, a judge of the district court, or a justice of the supreme court. *Held*, That such officer, in the consideration of objections, is not confined to mere formal matters relating to the certificate of nomination, but may determine from extrinsic evidence whether the candidates therein named were in fact nominated by the convention or assemblage of voters or delegates claiming to represent a party which cast the requisite number of votes at the last election.

4. **Regularity of Nominating Conventions: SECRETARY OF STATE.** It is not the province of the secretary of state to determine which of two rival state conventions of the same party is entitled to recognition as the regular convention.

5. ———: ———: CERTIFICATES OF NOMINATION. Where two factions of a political party nominate candidates and certify such nominations to the secretary of state in due form of law, the latter will not inquire into the regularity of the convention held by either faction, but will certify to the several county clerks the names of the candidates nominated by each, such practice being in harmony with the rule which requires courts, in case of doubt, to adopt that construction which affords the citizen the greater liberty in casting his ballot.

ORIGINAL application for *mandamus* to compel the secretary of state to certify to the county clerks the names of relators as nominees of the democratic party for the several state offices. *Writ denied.*

*John H. Ames* and *A. J. Sawyer*, for relators.

*George H. Hastings, Attorney General, contra.*

*J. H. Broady, amicus curiæ.*

POST, J.

This cause was submitted at the September, 1894, term just preceding the general election, and during the excitement incident to a political campaign, and although a decision was then announced, the preparation of an opinion embodying the views of the court was, for sufficient reasons,

deferred until this time. The cause was submitted upon a stipulation, all parties interested entering their voluntary appearance. The material facts appear from the stipulation as follows:

"On the 5th day of October, 1894, there was filed in the office of the defendant, as secretary of this state, a certain certificate of nomination signed by one W. L. Greene, as chairman, and one John F. Mefferd, as secretary, of the state convention of the people's independent party, held at the city of Grand Island on the 24th day of August, 1894, by which it was certified that on said day the following named persons were duly nominated by said convention as candidates for the offices below named, to be voted for at the general election to be held in said state on the 6th day of November, 1894, to-wit: Silas A. Holcomb for governor; James N. Gaffin for lieutenant governor; H. W. McFaddin for secretary of state; John H. Powers, state treasurer; John W. Wilson, state auditor; Daniel B. Carey, attorney general; Sidney J. Kent for commissioner public lands and buildings; William A. Jones, superintendent public instruction; and on the 27th day of September, 1894, there was filed in said office a certificate signed by Euclid Martin, as chairman, and S. M. Smyser, as secretary, of a convention representing the democratic party of said state, and held in Omaha on the 26th day of September, 1894, certifying that the following named persons had been duly nominated by said convention as candidates for the offices below named, and representing the democratic party, to be voted for at said general election, the said being your relators, to-wit: Peter B. Sturdevant for governor; Rodney E. Dunphy, lieutenant governor; De Forrest P. Rolf, secretary of state; Otto Bauman, for auditor; Lake Bridenthal, superintendent of public instruction; John H. Ames, attorney general; Jacob Bigler, commissioner of public lands and buildings; and on the 29th day of September, 1894, there was also filed in said office a

certificate signed by Willis D. Oldham, as chairman, and
Daniel B. Honin, as secretary, of a convention represent-
ing the democratic party of said state, held at Omaha on
the 26th and 27th days of September, 1894, and certifying
that the following named persons were duly named by said
convention as candidates for the offices below named, rep-
resenting the democratic party, to be voted for at said gen-
eral election, to-wit: Silas A. Holcomb, governor; James
N. Gaffin, lieutenant governor; Francis I. Ellick, secre-
tary of state; James C. Dahlman, auditor of public ac-
counts; Gottlieb A. Luikhart, treasurer; Daniel B. Carey,
attorney general; Sidney J. Kent, commissioner public
lands and buildings; William A. Jones, superintendent of
public instruction; and on the 29th day of September,
1894, there was also filed in the office of the said secretary
of state certain objections to said certificate of nomination
signed by the said Martin as chairman and said Smyser as
secretary of said democratic convention; and on the 2d
day of October, 1894, there was also filed in said office
certain objections to the said certificate of nomination
signed by said Willis D. Oldham as chairman and Daniel
B. Honin as secretary of said democratic convention, the
extent and nature of which said several objections are suffi-
ciently indicated and made known to your honors by the
decisions and determinations made and arrived at thereon
by the said defendant as secretary of state, which are here-
inafter more fully adverted to and set forth.    There are no
formal defects in said certificates of nomination, and the
democratic party cast more than one per cent of the total
vote in this state at the last election.

    "Upon these facts, and at the hearing upon said objections
to said certificates of nomination, it was, and it still is, con-
tended by the relators that the defendant was authorized
and empowered to decide as to the sufficiency of said sev-
eral certificates, such matters as pertain to their formal reg-
ularity only, in respect to which, if they should be found

defective, they would be capable of being made comformable
to law by amendment, and also that in no event was any
person whose name is found in two of said certificates enti-
tled to have his name printed more than once upon the offi-
cial ballots to be provided for the voters at the said ensuing
general election.  On the contrary, the defendant contended
and decided, in opposition to the express objection and pro-
test, oral and written, on behalf of the said relator, that
he was authorized and empowered by law to decide whether
either, and if either, which, of the last two mentioned cer-
tificates contained the names of persons who had been nomi-
nated for the offices named in said certificates or assem-
blages, regularly authorized according to the customary
rules of the democratic party of this state to nominate
persons to be voted for as candidates of said election by
the adherents of said party; and the said defendant also
contended and decided that he had the right and authority
to exclude from the official ballot to be provided at such
election either or both of said lists of candidates, if, in his
opinion, either or both of them were not put in nomination
by the convention or assemblage regularly authorized as
aforesaid, by refusing and omitting to certify the names of
such persons to the several county clerks of this state as
provided by law in such cases, and thereupon the said de-
fendant, as such secretary of state, did decide and announce
that your relators, whose names appear in the said certifi-
cate of nomination signed by the said Euclid Martin as
chairman, and the said S. M. Smyser as secretary, were not
put in nomination by a convention or assemblage regularly
authorized as aforesaid, and that their names should not and
would not be by him certified by him to the said county
clerks or be permitted to be printed upon the said official
ballots, to which decision and determination said defendant
still adheres.  At the same time the said defendant further
decided and announced that the said persons whose names
were contained in said certificate signed by Willis G. Old-

ham as chairman and Daniel Honin as secretary were nominated for said offices by convention or assemblage duly authorized and empowered as aforesaid, and that he would and should certify their names to said county clerks as the nominees of the democratic party to be printed upon the said official ballots, to be voted at said general election, and would certify them in such way and manner that those of them who were also the nominees of the said people's independent party should have their names printed twice upon said ballots, once as being the nominees of the said last named party and once as being the nominees of the democratic party, to which decision and determination the said defendant still adheres. To both these decisions and determinations your relators object, claiming and insisting that by carrying them into action, the said defendant would deprive not only your relators, but the democratic voters of said state, and a large number of other persons, of the right of the elective franchise and of other important legal rights guarantied to them by the constitution and laws of this state, and will especially deprive your relators of the right to which they are entitled, as well under the rules and usages of the democratic party of this state, as under the constitution and laws of Nebraska, to have their names printed upon said official ballot as the nominees of the democratic party for the several offices for which they have been nominated, as appears by said certificate, and also further embarrass and defeat the rights and privileges of your relators as candidates at said election, by permitting the names of other persons to appear upon said ballots under two party designations, whereas such persons are entitled to have their names printed thereon only once.

"Your relators and the defendant therefore respectfully pray this honorable court to decide, for their guidance and for the determination of their rights in the premises, the following questions involved in said controversy:

"First—Is it the duty of the defendant, as secretary of

State v. Allen.

state, to certify to the several county clerks of this state, within the time provided by law, the names of your relators as nominees of the democratic party of this state for the several offices, as set forth in the said certificate of nomination, signed by the said Martin as chairman and Smyser as secretary, and to require said names to be printed as said nominees upon the official ballots to be provided for said election?

"Second—Shall the names of persons appearing in any two of said certificates of nomination be certified to said clerk so as to appear, or is it lawful for them to appear more than once upon said official ballots?"

For convenience we will first consider the second question presented, viz., Does the law contemplate that the names of candidates receiving more than one nomination shall appear twice or more on the official and sample ballots? It is not clear from the statute that the respondent, as secretary of state, is chargeable with the duty of prescribing the form of the ballot for the several ballots, but as that objection was not interposed by him, it will not be noticed further. In the several states which, like ours, have adopted a modified form of the Australian ballot law we find two radically different provisions respecting the form of the ballot. In New York, Illinois, Maryland, and Kansas, and perhaps others, candidates of the several political parties are grouped together, so that it is possible for an elector by a single mark to vote the ticket of his party. In other states, including this, the names of candidates are required to be arranged in alphabetical order under the designation of the several offices. In the states first mentioned it is clear that the name of each candidate should appear on the ballot with the ticket of every party by which he may have been nominated. Numerous constructions have been given those statutes uniformly in harmony with the view here expressed. (*Vide Simpson v. Osborn*, 52 Kan., 328; *Fisher v. Dudley*, 22 Atl. Rep. [Md.], 2.) The

46

provisions of section 14 of the act approved March 4, 1891,
known as the "Australian Ballot Law," so far as material
in this connection, are as follows: "All official ballots pre-
pared under the provisions of this act shall be white in
color and of good quality of news printing paper, and the
names shall be printed thereon in black ink. Every bal-
lot shall contain the name of every candidate whose nomi-
nation for any office specified in the ballot has been certified
or filed according to the provisions of this act, and no other
names. The names of candidates for each office shall be
arranged under the designation of the office in alphabetical
order according to surnames, except that the names of elec-
tors of president and vice-president of the United States
presented in one certificate of nomination shall be arranged
in a separate group. Every ballot shall also contain the
name of the party or principle which the candidates repre-
sent, as contained in the certificates of nomination. At the
end of the list of candidates for each office shall be left a
blank space large enough to contain as many written names
of candidates as there are offices to be filled. There shall
be a margin on each side at least half an inch wide, and a
reasonable space between the names to be printed thereon,
so that the voter may clearly indicate, in the way hereinaf-
ter provided, the candidate or candidates for whom he
wishes to cast his ballot." The foregoing, which is the
only section relating to the form of the ballot, appears
from a casual reading to throw but little light upon the
intention of the legislature. Yet we are satisfied from a
more careful study of its provisions that it contemplates
the printing of the name of each candidate once only on
the ballot, accompanied by such political or other designa-
tions as correspond to the nomination papers on file in
the proper office. The grand design of the Australian bal-
lot law was the purity of elections and to protect the voter
and public at large from the effects of fraud and intimida-
tion; and the construction given the act should, if possible,

be in harmony with its beneficent object. A cardinal rule
for the construction of statutes is that in case of ambiguity
in an act the courts will adopt that construction best
adapted to promote the general object and most conforma-
ble to reason and justice. (See Endlich, Construction, 196.)
The rights of no person or party can be prejudiced by the
construction adopted which the rule contended for would
be liable to abuse tending to defeat the object of the statute.
In the smaller subdivisions of the state the evil resulting
from the repetition of names on the official ballot would be
reduced to the minimum, for the reason that the facts are,
as a rule, well known, and voters would rarely, if ever, be
deceived thereby; but such a practice, if applied to the state
at large, or the larger subdivisions, as congressional districts,
may be made the means of grave fraud and deception.
For example:

> "A. B.,          Democrat.
> "A. B.,          Republican."

This appearing on the official ballot would to the aver-
age voter suggest that the candidate named had been nom-
inated by two parties; but it may not to the ignorant and
uninformed convey any such meaning.  Nor can we con-
ceive of any object to be attained by the printing of the
name of a candidate twice or more on the ballot unless it
be to thus secure the support of electors opposed to so-called
fusion, and who, with a knowledge of the facts, might hesi-
tate to cast their votes for such candidate or candidates.
We must not, however, be understood as holding the pro-
vision of the ballot law under consideration to be manda-
tory.   Generally speaking, provisions which are not essen-
tial to a fair election will be held to be directory merely
unless the contrary clearly appears from the act itself.  (*State
v. Russell*, 34 Neb., 116, and authorities cited.)   Nor have
we overlooked the case of *State v. Stein*, 35 Neb., 848.
It is to be regretted that the opinion in that case does not
represent the views of the majority of the court.   What

was decided therein was that on the record made, votes for Johnson, democrat; Johnson, people's independent, and Johnson without political designation, were all cast for the intervenor, and in the absence of fraud should be counted for him. What was there said about repetition of names on the ballot is mere *obiter* and was so understood by the author of the opinion.

What was the duty of the respondent in regard to the so-called "Sturdevant Ticket"? It is by section 9 of the Australian ballot law provided that the secretary of state shall immediately, upon the expiration of the time for filing certificates of nomination with him, certify such nominations to the several county clerks. By section 11 it is provided: "All certificates of nomination which are in apparent conformity with the provisions of this act shall be deemed valid unless objections thereto shall be duly made in writing within three days after the filing of the same. In case such objection is made, notice thereof shall forthwith be mailed to all candidates who may be affected thereby. * * * The officer with whom the original certificate was filed shall, in the first instance, pass upon the validity of such objection, and his decision shall be final unless an order shall be made in the matter by the county court, or by a judge of the district court, or by a justice of the supreme court." It is claimed on behalf of the respondent that he is, by the provision quoted, required to determine all objections which may be interposed to any certificate, both formal and substantial. On the other hand, it is contended that his jurisdiction extends to matters of form only, and that in no event can he look beyond the certificate itself for the purpose of inquiring into the regularity of the nomination. The reluctance of courts to decide between rival factions of political organizations is proverbial, and is illustrated by the following, among the many cases in point: *In re Appointment of Supervisors of Election,* 9 Fed. Rep., 14; *In re Woodworth,* 16 N. Y. Sup.,

147; *In re Redmond*, 25 N. Y. Sup., 381; *In re Pollard*, 25 N. Y. Sup., 385; *Shields v. Jacob*, 88 Mich., 164; *People v. District Court*, 31 Pac. Rep. [Col.], 339. It was held in the last case cited, under a statute identical with ours, that neither the secretary of state nor the courts are authorized to determine which of two rival political conventions is entitled to represent the party in whose name they assume to act. It was also held that where two sets of nominations are made by rival conventions of the same party, it is the duty of the secretary to certify both sets, if apparently conformable to law, to the clerks of the several counties, on the ground that the courts should, in case of doubt, adopt that construction which affords the citizen the greatest liberty in casting his ballot. It is also said that the power of a mere ministerial officer to determine questions of such vast importance, upon which may depend the political destinies of a state, should not be permitted to rest upon any doubtful interpretation; and the doctrine in that case is approved without reservation by the supreme court of Michigan in *Shields v. Jacob, supra*. The soundness of those decisions upon the facts stated will not be called in question. In each there were two conventions called or held by rival factions of a party, each faction having an organization and claiming recognition in behalf of the party. In brief, the rivals appear to have been *de facto* parties. In the case at bar the claim of the relators rests upon the certificate alone. If they were placed in nomination by a convention, or even by a faction of the democratic party, that fact does not appear from the record. We are fully in sympathy with the sentiment to which expression is given in the cases cited, and are not unmindful of the abuses liable to follow from the entrusting of such extraordinary power to a mere ministerial officer and usually political partisan. But are we not, according to the doctrine of those cases, merely "escaping the perils of Charybdis to perish in Scylla"? However strongly we

may condemn the doctrine that to the secretary of state, or other officer exercising similar functions, is intrusted the power to determine questions of the character under consideration, equally to be deplored is an interpretation which limits his inquiry to matters of form only and requires him to recognize every paper having the semblance of a certificate of nomination regardless of the source from which it emanates, or whether or not such nominations were in fact made in this manner or by the agencies authorized by law.

Briefly stated, our conclusion is that while it is not the province of the secretary of state under our system to decide between rival factions of a party where each faction has made nominations, he should, in case of objection, ascertain from the record, or from extrinsic evidence, whether such candidates or either of them were in fact placed in nomination by a convention or assemblage of voters or delegates claiming to represent such party. It will be observed that there is no mention made in the stipulation of a convention or nomination of the relators in any manner according to the usage of the democratic party, nor do we know, unless by inference, that they represent even a faction of said party; but those, as we have seen, are questions which the respondent was required to determine on the hearing to which reference is made in the stipulation, and his conclusion cannot be questioned in this proceeding. It follows that the writ of *mandamus,* so far as it is sought thereby to require the respondent to certify the names of relators as candidates for the several state offices, should be denied.

WRIT DENIED.