South Omaha National Bank v. Farmers & Merchants National Bank of Fremont, Nebraska, et al.

Filed May 1, 1895.    No. 6271.

1. **Appearance: Definition.** An appearance is special when its sole purpose is to question the jurisdiction of the court. It is general if the party appearing invokes the power of the court on any question other than that of jurisdiction. Whether it is general or special is to be determined by an examination of the substance of the pleading, and not by its form.

2. **Garnishment: Venue.** Under our Code, an order of garnishment cannot be issued to a county other than that in which the principal action is brought.

Error from the district court of Douglas county. Tried below before Scott, J.

The opinion contains a statement of the case.

*Charles Offutt,* for plaintiff in error:

The motion filed by the garnishee constituted a general appearance and a waiver of its objections to jurisdiction. (*Porter v. Chicago & N. W. R. Co.,* 1 Neb., 14; *Aultman v. Steinan,* 8 Neb., 109; *Klopp v. Water-Works Co.,* 34 Neb., 808; *Bucklin v. Strickler,* 32 Neb., 602; *Whitney v. Lehmer,* 26 Ind., 503; *Peck v. Barnum,* 24 Vt., 75; *Reed v. Fletcher,* 24 Neb., 451.)

The district court of Douglas county acquired jurisdiction by the issuance of the order of attachment to Dodge county. The ancillary action of attachment was thus brought in Dodge county, and the garnishee was properly served there. (*Reed v. Maben,* 21 Neb., 696; *Blue Valley Bank v. Bane,* 20 Neb., 300; *Moore v. Stainton,* 22 Ala., 831; *Conahan v. Cullin,* 2 Dis. [O.], 1; *Toledo, W. & W. R. Co. v. Reynolds,* 72 Ill., 487; *Peck v. Barnum,* 24 Vt., 75;

*Whitney v. Munroe,* 19 Me., 42; *Bank of Augusta v. Conrey,* 28 Miss., 667; *Bryan v. Lashley,* 21 Miss., 284; *Barney v. Patterson,* 6 H. & J. [Md.], 182; *Perkins v. Norwell,* 6 Humph. [Tenn.], 151; *Mansfield v. New England Express Co.,* 58 Me., 38; *Northfield Knife Co. v. Shapleigh,* 24 Neb., 638; *Beamer v. Winter,* 21 Pac. Rep. [Kan.], 1078; *Woodward v. Adams,* 9 Ia., 474.)

*E. F. Gray* and *D. B. Carey, contra,* cited: *Mathews v. Smith,* 13 Neb., 178; *Stevens v. Dillman,* 86 Ill., 233.

IRVINE, C.

The plaintiff in error brought this action in the district court of Douglas county against George W. E. Dorsey, Hamilton H. Dorsey, and Jesse M. Marsh, individually and as partners doing business under the firm name of Dorsey Bros. & Co., to recover on a promissory note for $8,000. Attachments were issued directed to the sheriffs of Douglas, Saunders, and Dodge counties. Subsequently to the commencement of the action an affidavit for garnishment in the following form was filed:

" The affiant, Harry C. Bostwick, having been first duly sworn, deposes and says that he is the cashier of the plaintiff bank herein and its duly authorized agent; that he has good reason to and does believe that the Farmers & Merchants National Bank of Fremont, Nebraska, in the county of Dodge, has property of the defendants George W. E. Dorsey and Hamilton H. Dorsey, and of the defendants Dorsey Bros. & Co., in its possession or under its control; that this affiant is unable to specifically describe said property further than to say that it is money, choses in action, promissory notes, stocks, bonds, and other evidences of debt.

" And affiant further says that said Farmers & Merchants National Bank of Fremont, Nebraska, is indebted to said defendants George W. E. Dorsey and Hamilton H.

Dorsey, and each of them, and to the said defendants Dorsey Bros. & Co., in an amount unknown to this affiant."

On this affidavit an order of garnishment in the usual form was issued, directed to the sheriff of Dodge county, and a notice of garnishment served on the Farmers & Merchants National Bank, directing it to appear in the district court of Douglas county, on a day named in the writ and answer. Instead of answering, the bank appeared by the following motion: "The Farmers & Merchants National Bank of Fremont, Nebraska, moves the court to quash the notice of garnishment served upon Otto Huette, its president, by the sheriff of Dodge county, Nebraska, requiring him and it to appear in this said district court of Douglas county, to answer touching property and credits of said defendants, upon an order of attachment herein, and the sheriff's return to the service of said notice, because said notice and service are void, and without the authority of the law, and because said Farmers & Merchants National Bank and its said president reside and are within Dodge county and do not reside and are not within Douglas county, where this action is brought, and because it and its president ought not to be required to answer in garnishment in any other county than that of their residence. This motion is supported by affidavit." This motion was sustained, and the garnishee discharged; from the order thus made the plaintiff prosecutes error.

Two questions are presented by these proceedings. The first is whether the motion filed by the garnishee constituted a general appearance and waived jurisdictional defects; second, whether, if the appearance of the garnishee did not waive defects, an order of garnishment can be issued to a county other than that in which the action against the debtor is pending?

We do not think that the motion filed by the garnishee constituted a general appearance or estopped it from urging that it was not properly brought before the court. The

argument is, that the motion is too broad; that it does not purport to be a special appearance, and that by stating that the garnishee does not reside in Douglas county, it presents an issue not necessary to the question of jurisdiction. On the latter point it is sufficient to say that the pleader was merely stating the grounds upon which his motion was based; that by injecting the element of residence he was not calling upon the court for any affirmative action. The motion alleged that the garnishment was invalid; first, because the bank did not reside in Douglas county, and second, because it was not within Douglas county. If the bank gave one good reason for holding the garnishment invalid, the fact that it gave another reason which might not be good, and which was unnecessary, would not affect the merits of the motion; nor do we think that the appearance was made general by the failure to designate it as special. At the common law, pleadings had formal parts, and were determined rather according to their form than their substance. By the Code, formal pleadings do not exist, and the substance alone is looked to; therefore, if this motion was, in its substance, a special appearance, the plaintiff's contention must fail. An examination discloses that the object of the motion was merely to quash the notice of garnishment. It went solely to the question of jurisdiction, and did not invoke the power of the court on any question except that of jurisdiction. This, we think, is what distinguishes a special from a general appearance. In *Porter v. Chicago & N. W. R. Co.*, 1 Neb., 14, it was said by MASON, C. J., that a defendant may appear specially to object to the jurisdiction of the court, but if he seeks to bring its powers into action excepting on a question of jurisdiction, he will be deemed to appear generally. The same language was issued by LAKE, C. J., in *Crowell v. Galloway*, 3 Neb., 215. The same principle was applied in *Aultman v. Steinan*, 8 Neb., 109, and an appearance held general, because a motion was made to dismiss the case for reasons

held not to affect the jurisdiction of the court. This was also the ruling of the court in *Cropsey v. Wiggenhorn*, 3 Neb., 108, and in *Bucklin v. Strickler*, 32 Neb., 602. See, also, on this question a review of the cases in *Hurlburt v. Palmer*, 39 Neb., 158. The reason and the doctrine of all the cases is that an appearance is special when it is confined to an attack upon the jurisdiction, but that it becomes a general appearance whenever the power of the court is invoked on any other question.

We now come to the merits of the motion. It is familiar law that process of attachment and garnishment is solely the creature of statute. While the statutes on the subject are remedial in their character, and should consequently receive a liberal construction, still no powers can be exercised which are not within the terms of the statute expressly or by fair implication. Our Code (sec. 202) provides for issuing orders of attachment to different counties, and as a general proposition a garnishment, when founded upon a proper affidavit, may follow an attachment; but the garnishment depends upon the affidavit, and the requisites thereof appear in section 207 of the Code of Civil Procedure, which is as follows: "When the plaintiff, his agent or attorney, shall make oath, in writing, that he has good reason to and does believe that any person or corporation, to be named and within the county where the action is brought, has property of the defendant (describing the same) in his possession, if the officer cannot come at such property, he shall leave with such garnishee a copy of the order of attachment, with a written notice that he appear in court, at the return of the order of attachment, and answer, as provided in section 221." This section has existed without amendment since the adoption of the Code, November 1, 1858. It is contended on behalf of the plaintiff that the attachment and garnishment constitute a separate action, and that the requirement that the garnishee shall be within the county where the action is brought re-

7

fers to the attachment and to the county where the writ is
executed; but an inspection of the rest of the chapter re-
lating to attachment, we think, makes it clear that the
"action" referred to is the principal action on which the
attachment is based. Thus, section 198, the first of the
chapter, provides: "The plaintiff in a civil action for
the recovery of money may, at or after the commencement
thereof, have an attachment," etc. Section 199 provides:
"An order of attachment shall be made by the clerk of the
court, in which the action is brought," etc. Section 203:
"The return day of the order of attachment, when is-
sued at the commencement of the action, shall be the same
as that of the summons." Section 226: "Final judg-
ment shall not be rendered against the garnishee until the
action against the defendant in attachment has been deter-
mined; and if in such action judgment be rendered for de-
fendant in attachment, the garnishee shall be discharged
and recover costs." And so on throughout the chapter,
the word "action" being used, evidently, to distinguish the
principal case from the attachment proceedings. If such be
the true construction, then it is clear that the statute, in plain
and unambiguous language, requires the affidavit to show
that the garnishee is within the county where the principal
action is brought, and it is not claimed that outside of sec-
tion 207 there is any authority for issuing an order of gar-
nishment to another county. But if the word "action" be
held to refer to the attachment proceedings, still Douglas
would be the county where such action was brought. The
writ was issued from and was returnable to the district court
of Douglas county. The action was brought in Douglas
county, the writ was merely to be executed in Dodge county.
It was no more brought in Dodge county than was the
principal case, because a summons was issued and served in
that county upon the defendants there residing. There
exists in principle a reason for giving the statute the con-
struction we have indicated. A garnishee is an innocent

party not interested in the suit.   The whole policy of the
law is to protect him from expense, damages, costs, or un-
necessary annoyance.   A defendant must be sued in the
county where he resides, or is at the commencement of the
action, except in special cases, where a departure from the
general rule is necessary.   A witness cannot be required in
a civil case to leave the county where he resides, or is found,
in response to a subpœna from another county.   It seems
to have been the intention of the legislature to put a gar-
nishee on as favorable a footing as a defendant or a witness.
It would certainly be a great hardship to compel a gar-
nishee to travel over the state for the purpose of making
answer.   In support of plaintiff's contention, we are cited
to the case of *Conohan v. Cullin,* 2 Dis. [O.], 1.   In that case
it was held that service of an order of garnishment in Cin-
cinnati on an agent there of a corporation situated in Cleve-
land was bad, and in the opinion there is a *dictum* that to
authorize service on the Cleveland company an order of
attachment should be issued to Cuyahoga county.   We do
not know whether the Code, as it then existed in Ohio, was
similar to ours in this respect.   It is not now similar, and
has not been for many years.   It does not now require that
the affidavit shall show that the garnishee is within the
county, but provides especially for issuing orders of gar-
nishment to other counties, and for the taking of the an-
swers of the garnishees in the counties to which the orders
are issued.   But if the Ohio Code was, at the date of this de-
cision, similar to ours, we cannot think that we are bound by
the construction given by an inferior Ohio court in an *obiter
dictum,* the same year in which our Code was adopted.

From an examination, necessarily somewhat cursory, of
the statutes of other states we find none embracing the
language which is here the subject of investigation.   Florida,
Georgia, Ohio, and Texas provide specially for garnish-
ments to other counties, and all provide that in such case
an answer may be made without requiring the garnishee to

leave the county. We are aware that the construction we are giving the statute seems to leave the law in such a shape that property and credits of a debtor residing in the state cannot be reached when they are in the hands of a third person in a county where action cannot be brought against the debtor, because it has been held that action may not be brought in a county where the garnishee resides, and summons issued to the county of the debtor's residence. (*Hoagland v. Wilcox*, 42 Neb., 138.) We do not think, however, that we can avoid this difficulty without a forced construction of the statutes. The legislature, and not the courts, must correct the defect.

JUDGMENT AFFIRMED.