STATE OF NEBRASKA, EX REL. JAMES C. DAHLMAN, V. JOEL A. PIPER, SECRETARY OF STATE.

FILED DECEMBER 16, 1896.     No. 8790.

1. **Supreme Court: JURISDICTION.** The original jurisdiction of the supreme court, conferred upon it by the constitution, is confined to "cases relating to the revenue, civil cases in which the state shall be a party, *mandamus, quo warranto,* and *habeas corpus.*"

2. **Mandamus: PURPOSE OF WRIT.** The writ of *mandamus* can only be invoked to compel the performance of some particular act which the law especially enjoins as a duty resulting from an office, trust, or station. As a preventative remedy it cannot take the place of injunction.

3. ———: ———. *Mandamus* can be resorted to alone for the purpose of compelling action. It is not a proceeding to correct errors.

4. **Elections: SECRETARY OF STATE: APPEAL.** An appeal or proceeding in error will not lie directly to this court to review the decisions of the secretary of state under the Australian ballot law.

5. ———: ———: ——•—: NOMINATIONS. The findings of facts made by the secretary of state in passing upon objections filed against certificates of nomination, if not conclusive, are at least, *prima facie,* right.

6. ———: CERTIFICATES OF NOMINATION: OBJECTIONS: HEARING: SECRETARY OF STATE. Under our Australian ballot law the secretary of state, in passing upon objections to nomination certificates, is not confined to mere formal matters relating to such certificates, but may determine from extrinsic evidence whether the candidates therein named were in fact nominated by a convention called and held according to party usages and claiming in good faith to represent a political party which cast the requisite number of votes at the last election. *State v. Allen*, 43 Neb., 651, and *Phelps v. Piper*, 48 Neb., 724, followed.

7. Regularity of Nominating Conventions: SECRETARY OF STATE. It is neither the province of the secretary of state nor the courts to determine which of two rival state conventions of the same party so called and held is entitled to recognition as the regular convention. (*State v. Allen* and *Phelps v. Piper*, *supra*.)

8. ———: ———. Where rival factions of a political party in good faith nominate candidates at conventions called and held in accordance with the usages of the party and certify such nominations to the secretary of state, he will certify to the several county clerks the names of the candidates nominated by each. (*State v. Allen* and *Phelps v. Piper*, *supra*.)

ORIGINAL application for *mandamus* to compel the secretary of state to certify to the county clerks the names of certain persons only as nominees of the democratic party for electors for president and vice president and for other offices. *Writ denied.*

*Robert Wheeler, Frederick Shepherd,* and *Bane & Altschuler,* for relator.

*W. D. McHugh, Robert W. Patrick,* and *John H. Ames, contra.*

NORVAL, J.

This was a proceeding to determine the validity of certain nominations for electors for president and vice president and the several state offices, and to require the secretary of state to certify to the several county clerks the names of certain persons, and none others, as nominees of the democratic party for such offices. The cause was submitted upon the pleadings and oral admissions of the parties, without any testimony being adduced,

State v. Piper.

and a decision announced, denying the relief demanded, just preceding the last general election. To the writer is assigned the duty of preparing an opinion incorporating the views of the court upon the questions involved.

On the 30th day of September, 1896, a certificate of nomination of candidates for electors of president and vice president, and the several state offices, was filed with the secretary of state, signed by Ed P. Smith as chairman and Lee Herdman as secretary, which purported to be a certificate of the nominations made by the democratic party of the state in a regularly called delegated convention, held in the city of Omaha on the 4th day of September, 1896; and on the 7th day of October, 1896, there was filed with the secretary of state an amended and supplemental certificate of said nominations, signed by the same persons who signed the first certificate. No objections to either of the said certificates were ever filed with the secretary of state. On October 8, 1896, one Charles G. Ryan as chairman and Henry Koehler as secretary filed in the office of the secretary of state another certificate of other candidates for the same offices, also purporting to be a certificate of nominations made by the democratic party in a regularly called delegated convention held in the city of Omaha, on the 1st day of October, 1896. Within the time provided by law, James C. Dahlman, an elector of the state, and claiming to be chairman of the democratic state central committee, filed with the secretary of state written objections to this certificate, in substance as follows:

1. That said Charles G. Ryan and Henry Koehler, as chairman and secretary, respectively, are not members of the democratic party of the state, and that no convention of the democratic party was held at the time and place designated in said certificate.

2. That said pretended convention did not represent the democratic party of this state, or any party casting one per cent of the votes in the state at the last general election.

3. That said pretended convention did not represent, and had no authority to act on behalf of the democratic party in this state; that it was wholly unauthorized by the democratic party or any one authorized to act for said party, and was only called and held for the purpose of disorganizing and, as far as possible, injuring and destroying the democratic organization in this state, and, if possible, defeating the election of the regular nominees of said party.

4. That said pretended convention was not recognized by the duly organized democratic national convention, but on the contrary the state convention held on the 4th day of September, 1896, was recognized by the national democratic convention which convened in Chicago on July 7, 1896.

5. That said pretended convention of October 1 did not act in good faith in making nominations and filing said certificate with the secretary of state, but made said nominations and filed said certificate for the purpose of confusing and deceiving the voters in casting their ballots.

6. That the printing of the names set forth in the certificate upon the official and sample ballots will entail upon the state a very heavy additional and unnecessary expense.

7. That the regularly held and duly authorized convention of the democratic party of the state was the one which convened on September 4, 1896.

The secretary of state, upon the hearing of this protest, made findings of facts and rendered a decision overruling said protest and ordering that the names of the nominees mentioned in said certificate of nomination filed on October 8 be certified to the several county clerks as nominees of the democratic party. It was disclosed that two state conventions of the democratic party were held in the year 1896 for the purpose of nominating electors for president and vice president, and a full state ticket to be voted for at the last election, one September 4 and the

other on the 1st day of October, each having assembled
by virtue of a call regularly issued in accordance with
the practices of the party in such cases from a body
claiming to represent the democratic state central com-
mittee, and each convention claiming the right to act
for and on behalf of the democratic party of the state;
that each convention made nominations, and the same
were certified in due form to the secretary of state within
the time provided by law by the officers of each of said
conventions; that the convention which assembled on
October 1 met and made nominations in good faith in
pursuance of a regular call issued from the democratic
state central committee elected by a convention held in
1895, claiming to be the democratic state convention of
Nebraska, at which convention Hon. T. J. Mahoney was
nominated as candidate for the office of judge of the su-
preme court, and Hons. John H. Ames and W. S. Ashby
as candidates for regents of the State University, and
whose names were placed upon the official ballots for the
general election held in 1895, as democratic candidates
for said respective offices, and at said election said several
candidates received more than one per cent of the total
vote cast at the said election, and nearly twice as many
votes as were polled for other persons named upon said
ballot, as democratic candidates.

The respondent in his answer objects to the jurisdic-
tion of this court upon the following grounds:

1. That the proceeding herein is an equitable one for
injunction, which this court has no original jurisdiction
to entertain.

2. That the matters and things in controversy were
passed upon and decided by the secretary of state, and
this court has no power to review or modify his findings
or decision.

3. That the questions involved are not judicial, but
purely political in their character, and consequently sub-
jects in respect of which courts have no jurisdiction.

By section 2 of the article of the constitution of this

state relating to the judicial department, the original jurisdiction of the supreme court is confined to "cases relating to the revenue, civil cases in which the state shall be a party, *mandamus, quo warranto,* and *habeas corpus.*" There is no escaping the conclusion that this court has no original jurisdiction as a court of equity of causes involving relief solely obtainable by injunction unless it may be in revenue and state cases, of which this is not one, since no such power is conferred upon it by the fundamental law of the state. While it is true the petition prays for an order restraining the respondent from certifying to the several county clerks the names of the nominees of the convention of October 1, it is perfectly plain that merely a temporary injunctional order was asked to be made and enforced until such time as there should be a final hearing of the cause. The ultimate object of this proceeding was to compel the respondent to rescind his decision to certify the names of the nominees of the convention of October 1; in other words, to require the secretary of state to certify to the county clerks of the several counties of the state as nominees for the democratic party the names of the persons placed in nomination at the said convention held on September 4, and none others. In one sense it may be said that the relief demanded involves the perpetual enjoining of the certification to the various county clerks of the names of nominees of the said convention presided over by Charles G. Ryan as chairman and at which Henry Koehler acted as secretary, and if such was the sole nature or purpose of the suit, unquestionably this court would be without jurisdiction to hear or determine the same, for the writ of *mandamus* can only be invoked to compel an inferior tribunal, corporation, board, or person to perform some particular act which the law specially enjoins as a duty resulting from an office, trust, or station, and not merely to prevent it. On the other hand, injunction is wholly to restrain or prohibit the doing of a threatened act. As a preventative remedy simply, the writ of *man-*

*damus* cannot take the place of an injunction. Applying these principles to the case at bar, as made by the petition, it is believed that the ultimate relief sought is to compel the performance of a particular act by the respondent, which he had declined to do, namely, the certification to the county clerk of each county the names of the candidates mentioned in the certificate of nomination first filed as aforesaid with the secretary of state, as the sole nominees of the democratic party for electors of president and vice president and state offices, which act could not be enforced by injunction. The requiring of an officer by *mandamus* that he do some particular thing in a specified way necessarily implies it shall not be performed in any other mode, but that is not adopting proceedings by *mandamus* to effect the purpose of an injunction. Had the equitable powers of the proper forum been invoked to enjoin the certification to the county clerk of the names of the persons nominated at the convention held on October 1 it is evident that the right to the relief asked in this proceeding could not have been adjudicated therein. This action is not essentially one for injunction, and the first objection to the jurisdiction must be determined adversely to the respondent. It should be remarked before leaving the subject that two similar causes have been entertained by us (*State v. Allen*, 43 Neb., 651, and *Phelps v. Piper*, 48 Neb., 724), although the question of jurisdiction was not then urged upon the attention of the court in either of them.

We come now to the second objection interposed to the jurisdiction, namely, that this court is without authority to review or set aside the decision of the secretary of state in passing upon objections to nomination certificates. It was strenuously insisted in argument that the decision of the officer with whom certificates of nominations are filed, in determining objections thereto, is final and conclusive. Section 11 of our Australian Ballot Law (Compiled Statutes, ch. 26, sec. 136), provides: "All certificates of nomination which are in apparent con-

formity with the provisions of this act shall be deemed to be valid, unless objection thereto shall be duly made in writing within three (3) days after the filing of the same. In case such objection is made, notice thereof shall forthwith be mailed to all candidates who may be affected thereby, addressed to them at their respective places of residence, as given in the certificate of nomination. The officer with whom the original certificate was filed shall in the first instance pass upon the validity of such objection, and his decision shall be final, unless an order shall be made in the matter by a county court, or by a judge of the district court, or by a justice of the supreme court at chambers, on or before the Wednesday preceding the election. Such order may be made summarily upon application of any party interested, and upon such notice as the court or judge may require." A mere reading of the foregoing is sufficient to disclose that it was the purpose of the legislature to give to the secretary of state, or other officer with whom certificates of nomination are required to be filed, the power in the first instance to pass upon all objections to such certificates or nomination papers, and whose decision in the premises is at the furthest limit to be regarded as final, where no "order shall be made in the matter by the county court, or by a judge of the district court, or by a justice of the supreme court at chambers," within the time fixed by statute. If the determination of the secretary of state is absolutely final, it could not anywhere else be questioned. That his decision is not necessarily conclusive follows from the fact that the statute has made provision for reviewing the same, or rather for the determination of the questions by the county court, or by a judge of the district or supreme court. Whether that portion of the act is valid which attempts to confer power in such matters upon a judge of this court at chambers has been seriously doubted,—so much so that the present judges have not entertained such jurisdiction. The rulings of the secretary of state could be deemed final only when not

reviewed by the court or officer authorized by the statute so to do, and when he properly determines such questions alone as he is empowered by law to decide; that is, when he has proceeded legally and within his jurisdiction. If he has acted illegally, or without jurisdiction, his decision is without validity. Suppose a certificate of nomination should be filed after the statutory period, and he should determine to certify the names of the nominees therein mentioned; his action would not be conclusive or binding. Or should he refuse to certify the names of the candidates mentioned in a certificate in due form, who were properly nominated, and against such certificate no protest had been filed, his action would not be final, even though no order had been made in the premises by the court or judge mentioned in the law, and most assuredly *mandamus* would lie to compel him to certify the names of such nominees to the county clerks, because the duty is purely a ministerial one enjoined by law, involving no discretion. Again, should the secretary of state determine which of two rival conventions of the same political party was the regular convention, where both were called and held in accordance with the usages of the party, and each made nominations in good faith and certified the same in due form to him within the statutory time, and should certify the names of one set of candidates and decline to certify the other, *mandamus* could be invoked against him. His decision would not be final should he, without a hearing of objections properly made and filed to a certificate of nomination, determine that the names of the candidates therein mentioned should or should not appear upon the official ballot. There are many other instances which might be given where *mandamus* would be the appropriate proceeding to compel the secretary of state to act. Clearly it was not the purpose of the election law to take away the right theretofore conferred upon the courts to compel by *mandamus* the performance by an officer of a purely ministerial duty enjoined by law.

It is very evident an appeal or proceeding in error will

not lie directly to this court to review the decisions of the secretary of state under the Australian Ballot Act, for two reasons: First, no provision is made therefor by the law in question, or by any other statute; and in the next place, the appellate jurisdiction of this court is confined to a review of the judgments and orders made by the several district courts of the state. Neither error nor appeal can be prosecuted from the decision of any other court or tribunal directly to this court. (*Cleghorn v. Waterman*, 16 Neb., 225.)

While upon the argument the case was discussed by counsel for respondent partly as if this was a proceeding in error to review the action of the secretary of state, it is obvious that the petition is essentially an application for a writ of *mandamus*, and must be so regarded. The constitution has conferred original jurisdiction upon the supreme court in *mandamus*, hence the case is not one of the class without the jurisdiction of this court, but within it. Whether *mandamus* should issue in this particular case is another question,—one which will be determined later on. *Mandamus* can be resorted to alone for the purpose of compelling action; that is, the performance of a duty enjoined by law. It is not a proceeding to correct errors (*State v. Nemaha County*, 10 Neb., 32; *State v. Powell*, 10 Neb., 48; *State v. Kinkaid*, 23 Neb., 641; *McGee v. State*, 32 Neb., 149), so that errors, if any, committed by the respondent upon the hearing, or in his decisions, are not available here. Our inquiry is confined alone to the question whether the respondent has failed to discharge any ministerial act which the statute requires him to perform.

It appears from the findings of fact made by the secretary of state in passing upon the objections filed against the certificate of nomination that two rival factions of the democratic party in this state held conventions called in accordance with the usages of the party, and each in good faith nominated candidates for electors of president and vice president, as well as state offices, which nominations were duly certified to him; that each of said con-

ventions claimed to represent the democratic party of the state; "that the said convention of October 1, 1896, was held openly, and publicly announced in the public press, and that the fact that the said convention was to be held was a matter of public knowledge and notoriety, and that said convention assembled openly and publicly in pursuance of said call, and was comprised of delegates duly accredited to said convention from the various senatorial districts of the state, and that all its acts were open and public, and in good faith." The above findings were pleaded by the respondent in his answer, and, not having been controverted on the hearing, are at least *prima facie* correct, if not conclusive. When so regarded, what was the duty of the secretary of state? Was he required to decide between said rival factions of the party and certify to the several county clerks the names of the nominees of one of the conventions alone as the candidates of the democratic party? These precise questions have been already twice adjudicated by this court, and that, too, adversely to the contention of the relator herein, in a controversy involving the right of each faction of the democratic party in this state, now concerned in this litigation, to representation upon the official ballot. A reference to those cases will not be inappropriate.

*State v. Allen*, 43 Neb., 651, was an application for *mandamus* to compel the secretary of state to certify to the county clerks the names of the relators therein as nominees of the democratic party for the several state offices to be filled at the election to be held on the 6th day of November, 1894. Two certificates of nomination in due form had been filed with the secretary of state, each containing the names of different persons as nominees of the democratic party for state offices. A protest was filed against each certificate. That against the certificate containing relators' names was sustained by the secretary of state, and the other protest was overruled by him. The writ was denied because the claim of the relators rested alone upon the certificate of nomination, it not appearing from the

record that they were nominated by a convention claiming to represent the democratic ·party. Among others, the following legal propositions were determined by the court in that case: 1. The secretary of state in passing upon objections to nomination certificates is not confined to mere formal matters, but may determine from extrinsic evidence whether the candidates were in fact nominated by a convention claiming to represent a party which cast the requisite number of votes at the last preceding election. 2. That it was not the province of such officer to determine which of the two rival state conventions of the same party is entitled to recognition as the regular convention, but it is his duty to certify to the county clerks the names of all the candidates who were nominated by each convention according to the usage of such party. The same principles were held and applied in the opinion of RAGAN, C., in *Phelps v. Piper*, 48 Neb., 724; and further, that the question as to which one of the two factions of a political party has the right to act for the party, it is not the province of the courts to determine, since the question is a political, and not a judicial, one. To the same effect are *People v. District Court*, 18 Colo., 26, *Shields v. Jacob*, 88 Mich., 164.

Decisions of other states which hold that courts will determine which faction of a political organization is the regular one, and entitled to recognition, were, for the most part, based upon statutes materially different from ours, and therefore clearly distinguishable. Thus, where a statute authorizes a political party to select one or more of the election officers, and such party is divided into factions, of necessity the court, to prevent disorder and confusion, may decide which faction represents the regular organization. So, too, where the ballot law requires the names of candidates of political parties to be arranged and printed on the official ballot in a separate group, and it is made the duty of the election officer in arranging the ballot to place the ticket of the party having the greatest number of votes at the last preceding

election first on the ballot, and that the position of other tickets should be controlled relatively by the same rule, it is obvious that under such a law it is necessary to decide between rival factions of the same party, in order to determine the position of the tickets upon the ballot. But where, as under our ballot law, the reason for the rule does not exist, the rule itself does not obtain. The construction adopted by this court in its prior adjudications, and followed in this, is in consonance with the spirit and object of our election laws, since it affords the voter the greater liberty in casting his ballot.

The views expressed dispose of all the grounds set forth in the protest filed by the relator with the secretary of state excepting the fourth and sixth, which we will now briefly notice in their order. By the fourth objection it was sought to raise the question whether the decision of the national convention of a political party recognizing one faction of its party in a state is conclusive, and not reviewable by the court. Unfortunately for the relator such question is not before us, since the averment in the petition for the writ and in the protest relating thereto were put in issue by the answer and return of the respondent, and no evidence was introduced upon that subject. The sixth ground of objection is without merit for two reasons: First, the printing of the names of the nominees upon the official and sample ballot will entail no additional expense on the state, because it is not required to pay the cost of printing the ballots; second, the additional expense entailed by the printing of a candidate's name upon the ballot is no valid reason for excluding his name therefrom.

It having been disclosed by the record in this case that nominations for the same offices were in fact made by each of the two rival conventions of the democratic party of the state, called and held in accordance with the usages of the party, and each claiming in good faith to represent a political organization which cast one per cent of the total vote at the general election of 1895, it was

not the province of the secretary of state, nor is it of this court, to determine which convention was the regular one; but it was the duty of the secretary of state to certify the names of the nominees of both conventions to the county clerks.

WRIT DENIED.

IRVINE and RYAN, CC., not sitting.

RAGAN, C., dissenting.

I agree to the conclusion reached in this case, viz., that the writ asked for should be denied; but I do not agree to the reasons given for that conclusion. No statute of this state has conferred any authority on this court to review a decision made by the secretary of state, as to what nominations certified to him shall be placed on the official ballot; nor does the fact that the constitution invests this court with original jurisdiction in *mandamus* cases confer any authority on the court to control the discretion of the secretary of state, in this or any other case. The legislature has seen fit to provide that the secretary of state shall hear and decide all objections to nominations certified to him; and that "his decision shall be final unless an order shall be made in the matter by a county court or by a judge of the district court, or by a justice of the supreme court at chambers." (Compiled Statutes, ch. 26, sec. 136.) In the matter involved here no order has been made by a county court, a judge of the district court, or a justice of the supreme court, and if the statute is to be followed, the decision of the secretary of state is final; and "final," in judicial parlance, means that question is ended; decided; set at rest forever. It was quite as competent for the legislature to leave the decision of such matters as those involved here to the secretary of state as to any other person, officer, board, or tribunal, or to the supreme court. The matters in litigation here are not judicial. They are purely administrative or political in their nature, and neither the constitution nor the statute makes it the duty of this court to

pass upon them; nor has the court either original or appellate jurisdiction to say that the decision made by the secretary of state is either right or wrong. In my opinion the writ should be denied on the ground that this court has no jurisdiction in the premises.