State v. Smith.

STATE OF NEBRASKA, EX REL. FORREST L. WHEDON, V. SIDNEY E. SMITH, COUNTY CLERK OF BUFFALO COUNTY.

FILED DECEMBER 8, 1898.   No. 10427.

1. **Appearance:** JURISDICTION. A general appearance in an action by a defendant confers jurisdiction over his person, though no summons was ever served upon him.

2. **Jurisdiction.** Jurisdiction of the subject-matter is the power to hear and determine the cause.

3. ———: MANDAMUS. This court has original jurisdiction in actions of mandamus.

4. **Nominations:** OFFICES: COUNTY COMMITTEE: NOTICE OF MEETING. A nomination to public office made by four out of twenty-eight members of a county committee chosen by a political party is invalid, where previous notice of the time and the place of the meeting of the committee has not been given to the other members thereof.

ORIGINAL application for mandamus to compel respondent to omit from official ballots the names of persons whose nominations were invalid. *Writ allowed.*

*H. M. Sinclair,* for relator.

*F. E. Beeman, contra.*

NORVAL, J.

This was a petition for a peremptory mandamus to compel the respondent, as county clerk of Buffalo county, to print the official and sample ballots for the general election in November, 1898, without names of J. M. Easterling and Emery Wyman as nominees of the democratic party for representatives of the fifty-eighth representative district. To the application the respondent demurred for the reasons following: (1.) The court has no jurisdiction over his person or the subject-matter. (2.) The petition does not state sufficient facts to constitute a cause of action. Just prior to the said election a

submission was taken on the demurrer, its sufficiency was sustained, and a peremptory writ was awarded as prayed. This opinion is filed in pursuance of the announcement then made.

We are all agreed that jurisdiction over the person of the respondent was acquired by his entering a general appearance herein by counsel, without the issuance and service of a summons in the cause. (*South Omaha Nat. Bank v. Farmers & Merchants Nat. Bank*, 45 Neb. 29.)

The question of jurisdiction of the subject-matter in this kind of a proceeding ought to be no longer an open one in this state. Jurisdiction has been entertained of similar causes in *State v. Allen*, 43 Neb. 651, and *Woods v. State*, 44 Neb. 430, and the recent case of *State v. Clark*, 56 Neb. 584, although the question of jurisdiction was not raised in any of them, but was necessarily involved in all. The last was an original application for mandamus to require the county clerk of Nuckolls county to place on the ballots for use at the election held in November last the name of Joseph Patterson as candidate for county commissioner. Certificate of his nomination in due form had been filed with the respondent therein, yet he declined to recognize the validity of the certificate and refused to place the name of Patterson upon the ballots as the nominee for said office. A peremptory writ issued. In *State v. Piper*, 50 Neb. 25, the question of jurisdiction of this court over the subject-matter was squarely raised, and decided adversely to the contention of the respondent herein. RYAN and IRVINE, CC., did not sit in the cause, and RAGAN, C., filed an opinion dissenting from the conclusion of the court on that proposition. The decision on that point was followed in *State v. Piper*, 50 Neb. 39, 40, 42. In the opinion reported in 50 Neb. 25 this court, in passing upon the jurisdictional question, after quoting section 136, chapter 26, Compiled Statutes 1895, said: "A mere reading of the foregoing is sufficient to disclose that it was the purpose of the legislature to give to the secretary of state, or other officer

State v. Smith.

with whom certificates of nomination are required to be filed, the power, in the first instance, to pass upon all objections to such certificates or nomination papers, and whose decision in the premises is at the furthest limit to be regarded as final, where no 'order shall be made in the matter by the county court, or by a judge of the district court, or by a justice of the supreme court at chambers,' within the time fixed by the statute. If the determination of the secretary. of state is absolutely final, it could not anywhere else be questioned. That his decision is not necessarily conclusive follows from the fact that the statute has made provision for reviewing the same, or rather for the determination of the questions by the county court, or by a judge of the district or supreme court. Whether that portion of the act is valid which attempts to confer power in such matters upon a judge of this court at chambers has been seriously doubted,—so much so that the present judges have not entertained such jurisdiction. The rulings of the secretary of state could be deemed final only when not reviewed by the court or officer authorized by the statute so to do, and when he properly determines such questions alone as he is empowered by law to decide; that is, when he has proceeded legally and within his jurisdiction. If he has acted illegally, or without jurisdiction, his decision is without validity. Suppose a certificate of nomination should be filed after the statutory period, and he should determine to certify the names of the nominees therein mentioned; his action would not be conclusive or binding. Or should he refuse to certify the names of the candidates mentioned in a certificate in due form, who were properly nominated, and against such certificate no protest has been filed; his action would not be final, even though no order had been made in the premises by the court or judge mentioned in the law, and most assuredly mandamus would lie to compel him to certify the names of such nominees to the county clerks, because the duty is purely a ministerial one en-

joined by law, involving no discretion.   Again, should
the secretary of state determine which of two rival con-
ventions of the same political party was the regular con-
vention, where both were called and held in accordance
with the usages of the party, and each made nominations
in good faith and certified the same in due form to him
within the statutory time, and should certify the names
of one set of candidates and decline to certify the other,
mandamus could be invoked against him.   His decision
would not be final should he, without a hearing of objec-
tions properly made and filed to a certificate of nomina-
tion, determine that the names of the candidates therein
mentioned should or should not appear upon the official
ballot.   There are many other instances which might be
given where mandamus would be the appropriate pro-
ceeding to compel the secretary of state to act.   Clearly
it was not the purpose of the election law to take away
the right theretofore conferred upon the courts to com-
pel by mandamus the performance by an officer of a
purely ministerial duty enjoined by law."   We adhere to
that decision.   It is true said chapter has not conferred
upon this court power to control the action of the county
clerk or other officer, whose duty it is made by statute,
in the first instance, to pass upon questions of the
validity of nominations and whose names shall appear
upon the official and sample ballots, but that is no valid
argument against the power of this court to hear and
determine this controversy.   The constitution and the
statute have conferred original jurisdiction upon this
court in mandamus, and no other or further authority is
required to entertain the action.   Jurisdiction is the
power to hear and decide a legal controversy, and there
is no escaping the conclusion that the court has cogni-
zance of the subject of the cause.   The question of the
jurisdiction of the subject-matter is not whether this is a
proper case for the issuance of a writ of mandamus, but
has this court the power to hear and decide the matter.
We entertain no doubt of it.   (*State v. Elliott*, 48 Pac.
Rep. [Wash.] 734.)

The sufficiency of this petition to entitle relator to the relief demanded remains to be considered, and this involves the question of the right of J. M. Easterling and Emery Wyman to have their names appear upon the ballots as nominees of the democratic party for representatives of the fifty-eighth representative district, comprising the county of Buffalo. The respondent insists that under the averments of the petition, which the demurrer admits to be true, they have such right. The petition, or application for the writ, discloses that on September 24, 1898, a democratic convention for said district and county was held in the city of Kearney, which convention named a candidate for county attorney, and adjourned without making any nominations for the offices of representatives, but chose a county central committee composed of twenty-eight members, elected a chairman and secretary of said committee, and adopted a resolution authorizing and empowering said central committee to fill any vacancy or vacancies that then existed or should thereafter occur upon the ticket; that on October 1, 1898, five members of said committee met, with the chairman, without the entire membership of the committee having been notified of such meeting, and nominated said Easterling and Wyman as candidates of the democratic party for representatives; that thereafter there was filed with the respondent a certificate in due form of their nominations, and within three days thereafter relator filed with the county clerk a protest against said nominations, and to the placing of their names on the official ballot for the said district as nominees of the democratic party for the said offices, setting up in such protest, as grounds of objection, the facts already stated. A hearing was had thereon before the respondent, who overruled the objections, after making the following findings of fact and conclusions of law:

"1. That said democratic county convention assembled on the 24th day of September, 1898, in the city of Kearney, but did not make nominations for said offices, but

selected a county central committee, as set forth in said objections, and passed the resolution attached to said certificate of nomination. That said committee was composed of at least twenty-three members, besides its chairman and secretary.

"2. That on the 26th day of September nineteen members of the said committee were notified by a postal card sent by the chairman and addressed to each member at his post office address, stating, in substance, that on October 1, 1898, at his office, in the city of Kearney, at 2 P. M., a meeting of said committee would be held to consider the advisability of filling or putting on the democratic ticket nominees for said offices.

"3. That there was no evidence adduced, except in one instance,—the committeeman from Shelton township,— as to whether or not said notices were received by the absent committeemen, and on this point I make no finding. That only nineteen of the members of said committee were attempted to be notified.

"4. That on October 1, at the office of the chairman in the city of Kearney, five members of said committee met with the chairman and four of said members, with the chairman, made the nomination set forth in said certificate. I further find that W. S. Lampson, member from Elm Creek, was one of the five who met with the chairman but refused to participate in said nomination.

"5. I further find from evidence that it has been the usual custom of the democratic party in Buffalo county that in actions taken by the central committee, to act or take action, by those present, irrespective as to whether a majority of said committee were present or otherwise.

"CONCLUSIONS OF LAW.

"First. That said county central committee, by reason of their following their usual custom, had a legal right to act with a less number than a majority present, and that said committee therefore had the legal right to make said nominations evidenced by said certificate.

"Second. That said objections should be overruled and the names of the said candidates placed upon the official ballot as the democratic nominees for said offices. And it is so ordered."

It is unnecessary for the court at this time to decide whether the acts of a central or managing committee of a political organization, or party, are valid when taken at a meeting by a less number than a majority present and participating in accordance with party custom and usage, but assuming for the purpose of the present case that custom may control in the absence of specific directions given by the party, yet the pretended nominations of Easterling and Wyman cannot be sustained. They were not selected as candidates for said offices at a regular or stated meeting of the county central committee, but by a minority of the members thereof, who were specially convened for that purpose without notice to, or any attempt to notify all, the other members of the committee. It is not averred, nor did the respondent find upon the hearing had before him, that it was the custom or usage of the democratic party of Buffalo county in calling special meetings of the central committee not to notify each member thereof of the time and place fixed for convening; hence the usual rule applicable to other bodies or boards may be invoked. The authorities are quite uniform in holding that where a board or public body transacts business at a called or special session all members must have been given notice of the time and place of meeting in time to attend, or all must have been present, or such acts will be invalid. (*Lee v. Parry,* 4 Den. [N. Y.] 125; *Stewart v. Wallis,* 30 Barb. [N. Y.] 344; *Crocker v. Crane,* 21 Wend. [N. Y.] 211; *People v. Coghill,* 47 Cal. 361; *State v. Wilkesville Township,* 20 O. St. 288; *State v. James,* 4 Wis. 408; 19 Am. & Eng. Ency. Law 465.) This court held in *People v. Peters,* 4 Neb. 254, by LAKE, C. J., that a majority of a school district board cannot bind the district where the other members were absent and had not been notified of the meeting and

given an opportunity to attend. (See *Russell v. State*, 13 Neb. 69; *State v. Bemis*, 45 Neb. 724; *In re State Treasurer's Settlement*, 51 Neb. 116.) A nomination to fill a vacancy made by a minority of the county central committee was held void. (*In re Slucker's Nomination*, 18 Pa. Co. Ct. 227.) The following have more or less bearing upon the question before the court: *Schenck v. Peay*, 1 Woolw. [U. S.] 175; *North Carolina R. Co. v. Swepson*, 71 N. Car. 350; *In re Rogers and Sterr's Nomination*, 18 Pa. Co. Ct. 230; *In re Brown's Nomination*, 18 Pa. Co. Ct. 232; *In re Rutledge's Nomination*, 18 Pa. Co. Ct. 317; *In re Kooser's Nomination*, 18 Pa. Co. Ct. 360; *In re Hucy's Objection*, 19 Pa. Co. Ct. 138. As the entire membership of the county central committee was not notified of the meeting, or of the proposed action, the nominations in question are invalid, though party usage may have sanctioned the transaction of business by a minority of the body.

WRIT ALLOWED.

IRVINE, C.

The power of the court to review the action of the county clerk or secretary of state in such cases as the present has been sustained by former decisions in which I did participate. On principle I would agree with the dissenting opinion of RAGAN, C., in *State v. Piper*, 50 Neb. 25.

RAGAN, C.

I think the action of the democratic central committee absolutely void; but I still adhere to views expressed in *State v. Piper*, 50 Neb. 25.